## NOBLE STATE BANK *v.* HASKELL.[1]

### ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 71.   Argued December 7, 8, 1910.—Decided January 3, 1911.

The charter of a corporation which is subject to the usual reserved powers to alter or repeal is not impaired unless the subsequent statute deprives it of property without due process of law.

The broad words of the Fourteenth Amendment are not to be pushed to a drily logical extreme, and the courts will be slow to strike down as unconstitutional legislation of the States enacted under the police power.

Where the mutual advantage is a sufficient compensation, an ulterior public advantage may justify a comparatively insignificant taking of private property for what in its immediate purpose is a private use.

The police power extends to all the great public needs, *Canfield* v. *United States*, 167 U. S. 518, and includes the enforcement of com-

---

[1] See also *post*, p. 575, for opinion denying motion for leave to file petition for rehearing.

mercial conditions such as the protection of bank deposits and checks drawn against them by compelling coöperation so as to prevent failure and panic.

The dividing line between what is, and what is not, constitutional under the police power of the State is pricked out by gradual approach and contact of decisions on opposing sides; and while the use of public credit to aid individuals on a large scale is unconstitutional, a statute compelling banks to contribute to a guarantee fund to protect deposits, such as that of Oklahoma, under consideration in this case, is constitutional.

The Fourteenth Amendment does not prohibit States from forbidding a man to do things simply because he might do them at common law, and so *held*, that, where public interests so demand; that Amendment does not prohibit a State placing the banking business under legislative control and prohibiting it except under prescribed conditions.

The acts of December 17, 1907, and March 11, 1909, of Oklahoma, subjecting state banks to assessments for a Depositors' Guaranty Fund are within the police power of the State and do not deprive banks assessed of their property without due process of law or deny to them the equal protection of the law, nor do they impair the obligation of the charter contracts.

22 Oklahoma, 48, affirmed.

THE facts, which involve the constitutionality of the Oklahoma Bank Depositors' Guaranty Fund Acts, are stated in the opinion.

*Mr. C. B. Ames,* with whom *Mr. D. T. Flynn* and *Mr. J. B. Dudley* were on the brief, for plaintiff in error:[1]

The Oklahoma Depositors' Guaranty Fund Act is unconstitutional. The assessment is compulsory, not voluntary. It is entirely unlimited and may take all of the assets of the bank. It does not operate simply upon banks chartered or re-chartered after its passage, but upon all banks both old and new.

The fund raised is not applied to any governmental pur-

---

[1] See also arguments for, and against, the constitutionality of the Depositors' Guaranty Fund of Nebraska, *post,* p. 114, and of Kansas, *post,* p. 121.

pose, but is donated to private citizens who happen to be depositors of an insolvent bank. The law requires a taking of the plaintiff's property for a private use. *Savings & Loan Assn.* v. *Topeka*, 20 Wall. 655; *State* v. *Osawkee*, 14 Kansas, 418; *Lowell* v. *Boston*, 111 Massachusetts, 454; *B. & E. Ry. Co.* v. *Spring*, 80 Maryland, 510; *Missouri Pacific Ry. Co.* v. *Nebraska*, 164 U. S. 403.

It is not an exercise of the right of eminent domain, nor is it an exercise of the power of taxation. Cases *supra* and *Innes Co.* v. *Evert*, 86 Fed. Rep. 597; *Weismer* v. *Douglas*, 64 N. Y. 91.

It is not a valid exercise of the police power. *Hannibal & St. Jo. Ry. Co.* v. *Husen*, 95 U. S. 465; *Minnesota* v. *Barber*, 136 U. S. 313; *Lawton* v. *Steele*, 152 U. S. 133; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362; *Gulf, C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Lake Shore & M. S. Ry. Co.* v. *Smith*, 173 U. S. 684; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Chicago, B. & Q. Ry. Co.* v. *Illinois*, 200 U. S. 561; *Adair* v. *United States*, 208 U. S. 161; *Atchison, T. & S. F. Ry. Co.* v. *Campbell*, 61 Kansas, 439; *Colon* v. *Lisk*, 47 N. E. Rep. 302.

It is, therefore, a taking of property without due process of law and violative of the Constitution of the United States. *Holden* v. *Hardy*, 169 U. S. 366; *Cotting* v. *Goddard*, 183 U. S. 79; *Harding* v. *Butts*, 18 Illinois, 503; *Embury* v. *Connor*, 3 N. Y. 512; *Attorney General* v. *Boston & Albany R. R. Co.*, 35 N. E. Rep. 252; *Mays* v. *Seaboard Air Line Ry. Co.* (S. Car.), 56 S. E. Rep. 30.

In taking the plaintiff's property, it impairs the obligation of contracts and, being a taking without due process of law, cannot be upheld as an amendment of the plaintiff's charter. Cases *supra* and *Fletcher* v. *Peck*, 6 Cranch, 135; *Sinking Fund Cases*, 99 U. S. 720, 748; *Lake Shore & M. S. Ry. Co.* v. *Smith*, 173 U. S. 684; *People* v. *O'Brien* (N. Y.), 18 N. E. Rep. 692; *Opinion of the Justices*, 33 Atl. Rep. 1079, 1083; *Hill* v. *Glasgow Ry. Co.*, 41 Fed. Rep. 615,

617; *Grand Rapids Sav. Bank* v. *Warren,* 52 Michigan, 557; 18 N. W. Rep. 356; *Hathorn* v. *Calef,* 2 Wall. 10; *Mc-Donnell* v. *Ala. G. L. Ins. Co.* (Ala.), 5 So. Rep. 120; *Ireland* v. *Turnpike Co.,* 19 Ohio St. 369; *Vicksburg* v. *Waterworks Co.,* 202 U. S. 453.

Property cannot be taken for private use in the exercise of the police power. Classifying a statute as an exercise of the police power does not save it if it is in conflict with the Constitution.

Regulating railroads is clearly an exercise of the police power, but in so doing the State cannot do anything which takes for private use the smallest part of the railroad's property. *Attorney General v. B. & A. Ry. Co.* (Mass.), 35 N. E. Rep. 252; *Atchison, T. & S. F. Ry. Co.* v. *Campbell,* 61 Kansas, 439; *Mays* v. *Seaboard Air Line Ry. Co.* (S. Car.), 56 S. E. Rep. 30; *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403; *S. C.,* 217 U. S. 196.

The *Gibbs Case,* 142 U. S. 386, does not support a different doctrine.

. Private property cannot be taken for private use by the amendment of corporate charters. *Woodward* v. *Central Vt. Ry. Co.,* 180 Massachusetts, 599; *Lake Shore & M. S. Ry. Co.* v. *Smith,* 173 U. S. 684.

*Mr. Charles West,* Attorney General of the State of Oklahoma, with whom *Mr. E. G. Spilman* and *Mr. W. C. Reeves* were on the brief, for defendants in error:

The security of the public in its dealings with banks is a governmental function, and the creation of a mutual reserve fund is a safety to the public and a compulsory benefit to the banks. For definition of banking see *Kiggins* v. *Munday,* 19 Washington, 233; *Niagara County Bank* v. *Baker,* 15 Ohio St. 68, 87; *American Nat. Bank* v. *Morey,* 69 S. W. Rep. 759; *Patterson* v. *Marine Nat. Bank,* 130. Pa. St. 419; *Houston* v. *Brader,* 37 S. W. Rep. 467; *People's Bank* v. *Le Grand,* 103 Pa. St. 309, 314.

As to issue of circulation and of franchise see *Bank of Augusta* v. *Earle*, 13 Pet. 519, 596; *Meyers* v. *Manhattan Bank*, 20 Ohio, 295.

As to proper exercise of police power see Freund, §§ 400, 401 and 40.

Banking is a public business. *Munn* v. *Illinois*, 94 U. S. 113; *State* v. *Rich Creek*, 5 L. R. A. (N. S.) 875.

The Constitution is to be liberally construed, *Gibbons* v. *Ogden*, 9 Wheat. 187, and the law must be held to be valid unless plainly invalid. *Hylton* v. *United States*, 3 Dall. 171, 175.

A state statute modifying a common-law rule is not necessarily deprivation of property. *Munn* v. *Illinois*, 94 U. S. 113; *Goodsil* v. *Woodmanse*, 11 L. R. A. 421; *Charlotte &c. R. R. Co.* v. *Gibbes*, 142 U. S. 386; *Cooley* v. *Wardens*, 12 How. 298; *Tenny* v. *Lentz*, 16 Wisconsin, 566; *Vanhorn* v. *People*, 46 Michigan, 183; *Holst* v. *Row*, 29 Ohio St. 340; *Town of Wilton* v. *Town of Weston*, 48 Connecticut, 325; *Morgan Co.* v. *Louisiana Board*, 118 U. S. 455; *N., C. & St. L. R. R. Co.* v. *Alabama*, 128 U. S. 98; *Mobile* v. *Kimball*, 102 U. S. 691; *New York* v. *Squire*, 145 U. S. 175; *Head* v. *Amoskeag Manufactory Co.*, 113 U. S. 9; *Wurtson* v. *Hoagland*, 114 U. S. 606; *State* v. *Board*, 87 Minnesota, 325; 92 N. W. Rep. 216; *Swift* v. *Calnan*, 102 Iowa, 136; 37 L. R. A. 462; *Firemen* v. *Louisburg*, 21 Illinois, 511; *Milwaukee* v. *Helfenstein*, 16 Wisconsin, 142; *Firemen* v. *Roome*, 93 N. Y. 313; *Phœnix Co.* v. *Montgomery*, 42 L. R. A. 468.

All banking can be made a franchise. Zane on Banking, §§ 7, 15; Morse on Banks, § 13; *State* v. *Woodmanse*, 11 L. R. A. 420; *Myers* v. *Manhattan Bank*, 20 Ohio, 295; *State* v. *Stebbins*, 1 Stewart, 299; *Allnutt* v. *Inglis*, 12 East. Rep. 527; *Munn* v. *Illinois*, 94 U. S. 113; Hale de Portibus Maris, 1 Harg. Law Tracts, 78.

The exercise of police power over the subject of banking violates no vested rights. *Sioux City Co.* v. *Sioux City,*

138 U. S. 98; *N. Y., N. H. Co.* v. *Bristol,* 151 U. S. 556; *N. Y. & N. H.* v. *Commonwealth,* 200 U. S. 361; *Cummings* v. *Spaunhorst,* 5 Mo. App. 21; *Attorney General* v. *Insurance Co.,* 82 N. Y. 172.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding against the Governor of the State of Oklahoma and other officials who constitute the State Banking Board, to prevent them from levying and collecting an assessment from the plaintiff under an act approved December 17, 1907. This act creates the Board and directs it to levy upon every bank existing under the laws of the State an assessment of one per cent of the bank's average daily deposits, with certain deductions, for the purpose of creating a Depositors' Guaranty Fund. There are provisos for keeping up the fund, and by an act passed March 11, 1909, since the suit was begun, the assessment is to be five per cent. The purpose of the fund is shown by its name. It is to secure the full repayment of deposits. When a bank becomes insolvent and goes into the hands of the Bank Commissioner, if its cash immediately available is not enough to pay depositors in full, the Banking Board is to draw from the Depositors' Guaranty Fund (and from additional assessments if required) the amount needed to make up the deficiency. A lien is reserved upon the assets of the failing bank to make good the sum thus taken from the fund. The plaintiff says that it is solvent and does not want the help of the Guaranty Fund, and that it cannot be called upon to contribute toward securing or paying the depositors in other banks consistently with Article I, § 10, and the Fourteenth Amendment of the Constitution of the United States. The petition was dismissed on demurrer by the Supreme Court of the State. 22 Oklahoma, 48.

The reference to Article I, § 10, does not strengthen the

plaintiff's bill. The only contract that it relies upon is its charter. That is subject to alteration or repeal, as usual, so that the obligation hardly could be said to be impaired by the act of 1907 before us, unless that statute deprives the plaintiff of liberty or property without due process of law. See *Sherman* v. *Smith*, 1 Black, 587. Whether it does so or not is the only question in the case.

In answering that question we must be cautious about pressing the broad words of the Fourteenth Amendment to a drily logical extreme. Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guarantees in the Bill of Rights. They more or less limit the liberty of the individual or they diminish property to a certain extent. We have few scientifically certain criteria of legislation, and as it often is difficult to mark the line where what is called the police power of the States is limited by the Constitution of the United States, judges should be slow to read into the latter a *nolumus mutare* as against the law-making power.

The substance of the plaintiff's argument is that the assessment takes private property for private use without compensation. And while we should assume that the plaintiff would retain a reversionary interest in its contribution to the fund so as to be entitled to a return of what remained of it if the purpose were given up (see *Receiver of Danby Bank* v. *State Treasurer*, 39 Vermont, 92, 98), still there is no denying that by this law a portion of its property might be taken without return to pay debts of a failing rival in business. Nevertheless, notwithstanding the logical form of the objection, there are more powerful considerations on the other side. In the first place it is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. *Clark* v. *Nash*, 198 U. S. 361. *Strickley*

v. *Highland Boy Mining Co.*, 200 U. S. 527, 531. *Offield* v. *New York, New Haven & Hartford R. R. Co.*, 203 U. S. 372. *Bacon* v. *Walker*, 204 U. S. 311, 315. (And in the next, it would seem that there may be other cases beside the every day one of taxation, in which the share of each party in the benefit of a scheme of mutual protection is sufficient compensation for the correlative burden that it is compelled to assume. See *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190. At least, if we have a case within the reasonable exercise of the police power as above explained, no more need be said.

It may be said in a general way that the police power extends to all the great public needs. *Camfield* v. *United States*, 167 U. S. 518. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Among matters of that sort probably few would doubt that both usage and preponderant opinion give their sanction to enforcing the primary conditions of successful commerce. One of those conditions at the present time is the possibility of payment by checks drawn against bank deposits, to such an extent do checks replace currency in daily business. If then the legislature of the State thinks that the public welfare requires the measure under consideration, analogy and principle are in favor of the power to enact it. Even the primary object of the required assessment is not a private benefit as it was in the cases above cited of a ditch for irrigation or a railway to a mine, but it is to make the currency of checks secure, and by the same stroke to make safe the almost compulsory resort of depositors to banks as the only available means for keeping money on hand. The priority of claim given to depositors is incidental to the same object and is justified in the same way. The power to restrict liberty by fixing a minimum of capital required of those who would engage in banking is not

denied. The power to restrict investments to securities regarded as relatively safe seems equally plain. It has been held, we do not doubt rightly, that inspections may be required and the cost thrown on the bank. See *Charlotte, Columbia & Augusta R. R. Co.* v. *Gibbes,* 142 U. S. 386. The power to compel, beforehand, coöperation, and thus, it is believed, to make a failure unlikely and a general panic almost impossible, must be recognized, if government is to do its proper work, unless we can say that the means have no reasonable relation to the end. *Gundling* v. *Chicago,* 177 U. S. 183, 188. So far is that from being the case that the device is a familiar one. It was adopted by some States the better part of a century ago, and seems never to have been questioned until now. *Receiver of Danby Bank* v. *State Treasurer,* 39 Vermont, 92. *People* v. *Walker,* 17 N. Y. 502. Recent cases going not less far are *Lemieux* v. *Young,* 211 U. S. 489, 496. *Kidd, Dater and Price Co.* v. *Musselman Grocer Co.,* 217 U. S. 461.

It is asked whether the State could require all corporations or all grocers to help to guarantee each other's solvency, and where we are going to draw the line. But the last is a futile question, and we will answer the others when they arise. With regard to the police power, as elsewhere in the law, lines are pricked out by the gradual approach and contact of decisions on the opposing sides. *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355. It will serve as a datum on this side, that in our opinion the statute before us is well within the State's constitutional power, while the use of the public credit on a large scale to help individuals in business has been held to be beyond the line. *Loan Association* v. *Topeka,* 20 Wall. 655. *Lowell* v. *Boston,* 111 Massachusetts, 454.

The question that we have decided is not much helped by propounding the further one, whether the right to engage in banking is or can be made a franchise. But as the latter question has some bearing on the former and as it

will have to be considered in the following cases, if not here, we will dispose of it now. It is not answered by citing authorities for the existence of the right at common law. There are many things that a man might do at common law that the States may forbid. He might embezzle until a statute cut down his liberty. We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the State in taking the whole business of banking under its control. On the contrary we are of opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe. In short, when the Oklahoma legislature declares by implication that free banking is a public danger, and that incorporation, inspection and the above-described co-operation are necessary safeguards, this court certainly cannot say that it is wrong. *North Dakota* v. *Woodmansee,* 1 N. Dak. 246. *Brady* v. *Mattern,* 125 Iowa, 158. *W ted* v. *Bergh,* 141 Wisconsin, 569. *Commonwealth* v. *Vrooman,* 164 Pa. 306. *Myers* v. *Irwin,* 2 S. & R. 368. *Myers* v. *Manhattan Bank,* 20 Ohio, 283, 302. *Attorney General* v. *Utica Insurance Co.,* 2 Johns. Ch. 371, 377. Some further details might be mentioned, but we deem them unnecessary. Of course objections under the state constitution are not open here.

*Judgment affirmed.*[1]

---

[1] A motion for leave to file petition for rehearing was made and denied.—See opinion, p. 575, *post.*