Johnson, J.
The treasurer of Fairfield county brought suit against Ellinger to recover taxes charged against him on the tax duplicate, and prayed for the sale of a tract of land on which the taxes were claimed to be a lien. Ellinger is the owner of a private right of way leading from his premises to a public highway. The adjacent lands are farms, on which the owners conduct ordinary farming operations, and the private right of way *134 passes through them. Ellinger uses his right of way for the usual purposes of a farm outlet to and from his lands. The trustees of the township, in which the lands are situated, proceeding under Section 5908, General Code, and sections following, ordered Ellinger to build one-half of the fence on each side of his right of way. This he refused to do. The trustees then caused the fence to be built pursuant to the statute, and the cost of it was certified to the county auditor. The cause was tried to a jury and a verdict rendered for the defendant. The judgment entered on this verdict was affirmed by the court of appeals, and error is prosecuted here.
It is conceded that the verdict of the jury necessarily followed the charge of the trial court, which entertained the view that the statutory provisions under which the assessment was made are unconstitutional.
Section 5908, General Code, provides that “The owners of adjoining lands shall build, keep up and maintain in good repair in equal shares all partition fences between them,” etc., and Section 5919 enacts, “In this chapter, the term ‘owner’ shall apply to the owner of such lands in fee simple, of estates for life or of rights of way while used by the owners thereof as outlets, but these proceedings shall not bind the owner unless notified as provided herein:”
It is conceded that there was no gate at the point where the right of way enters upon the public road, and it is contended that if Sections 5908 and 5919 are to be so construed as to permit the laying of *135 the cost for half of the fence on either side of the right of way upon the “owner” thereof it would be a taking of his property in violation of the constitution.
The legislation in Ohio with reference to fencing lands has advanced from time to time in the light of experience and to meet what the general assembly regarded as the requirements of changing conditions.
In the early days farmers were permitted to allow their stock to run at large. A farmer was obliged to fence out live stock in order to protect his crops. The situation at that time is well set forth in Kerwhacker v. C., C. & C. R. R. Co., 3 Ohio St., 172, 182.
As the state developed and the quantity of cleared land increased, new conditions arose. It was found necessary to require farmers to fence in, instead of fencing out. But for many years before that, the legislature had made provisions for the payment of one-half the cost of partition or line fences by which adjoining farmers secured enclosures. In the early times there were fence viewers provided for by statute, and later these were abolished and jurisdiction of the subject was conferred on the township trustees.
But in order to impose the liability on a farmer to pay for one-half of the line fence under the law as it stood during that long period, it was necessary that his land should thereby be enclosed.
In Kingman v. Williams, 50 Ohio St., 722, it was held that one adjoining proprietor can compel another to contribute to the expense of building or *136 maintaining a partition fence between their lands, only when th'e partition fence completes an enclosure which contains no other lands than those of the latter.
Section 4239, Revised Statutes of 1880, provided that the “owner * * * of land adjoining a fence * * * on the line of his land, who makes or causes to be made an inclosure adjoining such fence, so that such fence answers the purpose of inclosing his land, shall pay,” etc.
This continued to be the state of the law until April 18, 1904 (97 O. L., 138), when the general assembly amended Section 4239, Revised Statutes, so as to read: “That the owners of adjoining lands shall build, keep up and maintain in good repair all partition fences between them in equal shares, unless otherwise agreed,” etc.
This amendment was under examination in Alma Coal Co. v. Cozad, Treas., 79 Ohio St., 348. The allegations of the petition, which were admitted by demurrer, showed that the lands of the coal company were wild, uncultivated and unfenced, that the company had no intention to improve, fence or cultivate any portion of them, and that the fence could be of no value to it whatever. The court say, at page 355: “The powers of the imagination will be exhausted in vain to find a member of society who will be benefited by the imposition which is sought to be made upon plaintiff, except Allen, the adjoining proprietor.”
It was held in the syllabus:
“1. The provisions of the constitution forbid not only the taking of the private property of one, *137 but as well the laying of an imposition upon it, for the sole benefit of another.
“2. The act of April 18, 1904 (97 O. L., 138), may not be so construed and administered as to charge an owner of lands which are, and are to remain, unenclosed, with any part of the expense of constructing and maintaining a line fence for the sole benefit of the adjoining proprietor
It will be observed that the court did not in that case hold the amended Section 4239, Revised Statutes, to be unconstitutional. But the right to invoke its application to a situation such as found in that case was denied. In the facts as they there existed there was no possible basis for the assessment on account of benefit, for there was none.
It is equally evident that there could be no compulsion under the police power to build the fence or contribute to the cost of it, because there was no such use of the coal company’s property as to indicate probable injury to its neighbors or to the community in the absence of a fence.
It must be noted that the whole s,cheme of legislation on the subject only applies to the rural districts. The urban districts are expressly excluded.
From the fact that for so long a time the statutes required an owner to contribute to the cost only where the “fence answered the purpose of enclosing his land,” it would seem to be apparent that at that time the general assembly felt that the only benefit conferred on a farmer’s land by a fence was by its making a complete enclosure. The amendment to the statute in 1904, now1 Section 5908 et seq., General Code, evidences a different *138 view by the legislature and a determination to impose a larger duty, namely, the view that there are conditions and circumstances in which a partition fence is of advantage and value to a landowner, even when it does not make a complete enclosure. When such a situation is presented the enforcement of the requirements of the statute is not a violation of rights guaranteed by the constitution.
Manifestly entertaining the same view, and with the same purpose and intent, the legislature enacted the subsequent amendment (98 O. L., 149), now Section 5919, General Code, which includes the provision that the term “owners” shall apply to the owners of rights, of way while used by the owners thereof as farm outlets. It is easy to understand that the general assembly contemplated that the fencing of such a right of way would confer a benefit on the owner thereof, and be of assistance and convenience in driving stock in and out of his own farm, to and from the public road beyond. The annoyance and the inevitable trespassing on adjoining fields and crops which would result from the absence of a fence along a private road through cultivated lands on either side are apparent. But it was for the general assembly to deal with that matter; and when its action is founded in reason, and has a real relation to a subject properly within the scope of the legist lative power, its will must be judicially enforced.
Moreover, a statute prescribing the duty of adjoining owners to fence is in the nature of the exercise of the police power. The assessment *139 differs from a special assessment to pay for a public improvement made by a governmental body. In the latter case the special assessment is made and sustained because the public improvement confers a special benefit on the property assessed, different from the general benefit conferred on the public; and the special assessment must be limited to the extent of the special benefit. But, in the case of the fence, there is no assessment in the sense just described. The owner is required by the statute to himself build his part of the fence. That is a duty that is imposed upon him, because of the situation and the use made of his property; and because of its relation to the property of his neighbors. If he does not perform it, the designated authorities proceed to build the fence and collect the cost thereof from him in the manner laid down in the statute.
The state is invested with the power in the presence of the necessities of economic conditions to prescribe such regulations with reference to persons and property as are reasonable and have a real relation to the subject. And if in the judgment of the legislature the natural result of the ordinary use by the owner of a private right of way, which is bounded upon either side by farming lands owned by others; would be to subject the crops and property of the latter to the risk of probable damage from the passage of stock and the encroachments of traffic, it may in the exercise of the police power, for the ulterior public advantage, require the owner of such right of way to join with his adjacent neighbors in building a fence on jheir respective lines.
*140 The validity of such a requirement is to be determined wholly without reference to whether gates are fixed at the end of the right of way, making a complete enclosure. The making of the complete enclosure of the right of way is not the necessary thing. It is not the thing which gives the economic value to the fence, or makes the economic condition which justifies legislation passed to assist the orderly development of agriculture in the interest of the general welfare. It is upon these general grounds that legislation has proceeded which requires railroad companies to build fences along their rights of way through private lands, sufficient to turn stock; and to erect private crossings over railway tracks where the right of way separates a private owner’s land. Legislation of that character has uniformly been upheld.
In Noble State Bank v. Haskell, 219 U. S., 104, which involved the constitutionality of a law, passed in the exercise of the police power, to establish a deposit guaranty fund, objection was made that the tax was an appropriation of the private property of one bank to pay the debts of another, without due process of law. The court say, at page 110: “Nevertheless, notwithstanding the logical form of the objection, there are more powerful considerations on the other side. In the first place it is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use.”
*141 We think there is not presented here a case in which the enforcement of the legislation under examination will be a violation of rights guaranteed by the Bill of Rights.
In this case the defendant set up another defense in which he contended that the right of way here involved was not private, but public.
In the view taken by the courts below this issue was not reached on the trial. Of course if the defendant does not own it, if it is not private but public, he could not be compelled to pay the tax. So that as to that issue the cause will be remanded for further proceedings according to law.

Judgment reversed.

Wanamaker, Newman, Jones, Matthias and Donahue, JJ., concur.