**UNITED STATES BUILDING & LOAN ASS'N et al. v. McCLELLAND, State Com'r.**

No. 10266.

District Court, D. Colorado.

March 12, 1934.

Fred S. Caldwell, of Denver, Colo., for plaintiffs.

Paul P. Prosser, Colorado Atty. Gen., J. Glenn Donaldson, Colorado Asst. Atty. Gen., and Bernard J. Seeman, of Denver, Colo., for defendant.

SYMES, District Judge.

The three plaintiffs severally allege they are corporations organized and existing under the laws of Colorado and carrying on business therein; that the amount involved in the suit as to each one separately is over $3,000; and that the action arises under the Constitution of the United States.

Next, the bill sets forth verbatim certain sections, but not all, of the recent act of the Colorado Legislature (chapter 47, art. 8, of the 1933 Session Laws of Colorado [page 331]). This is a comprehensive Code creating a building and loan department of the state of Colorado, defining its powers, giving it supervision over all foreign and domestic building and loan corporations doing business in the state, with power to grant certificates to do business. It provides that if the commissioner, after an examination, shall find that any association is conducting its business in an unsafe or unauthorized manner, he may order a discontinuance of such violations or practices, and if the association shall refuse or neglect to comply with the order, or for other reasons set forth, he may revoke the certificate of authority, and with the approval of the Governor first had and obtained, take temporary possession of its property and business assets, etc., and shall give a surety bond, conditioned for the faithful discharge of his duties in connection with the liquidation of the affairs of such association.

It is then alleged that on January 12, 1934, the defendant the commissioner, and his deputies, over the protest of the plaintiffs and their officers, took actual physical possession and seized and carried away the books, records, and other property of each plaintiff, and has since retained such possession to their irreparable damage, etc.; that the statute upon which the defendant relies for his authority violates the Fourteenth Amendment of the Constitution of the United States, in that plaintiffs were not afforded a hearing prior to the seizure of their property, does not afford them due process of law, because the commissioner acts on his own ex parte investigation; and because the commissioner, "belonging to the executive department of the State of Colorado," exercises under this law powers properly belonging to the judicial department in violation of the Colorado Constitution. Furthermore, that section 15 of article 8 of this statute is (page 344), in effect, a bankruptcy act as it applies to building and loan associations, and therefore violates section 22, tit. 11 of the United States Code (11 USCA § 22). Injunctive relief is prayed for.

The defendant filed a plea to dismiss the complaint for lack of jurisdiction on the ground that there is no diversity of citizenship, and that no substantial Federal question is involved.

The matter has been twice argued and briefs filed. The arguments and briefs were confined to one question—the request of the plaintiffs for a hearing on their application for a temporary injunction before a court of three judges pursuant to section 266 of the Judicial Code, as amended (28 USCA § 380).

The duty of this court under such circumstances is clear. Ex parte Poresky, 290 U. S. 30, 54 S. Ct. 3, 4, 78 L. Ed. 152, decides that in the absence of diversity of citizenship (as is the case here), it is essential to federal jurisdiction that a substantial federal question should be presented. " 'A substantial claim of unconstitutionality is necessary for the application of section 266,' " that "that provision does not require three judges to pass upon this initial question of jurisdiction." Furthermore, that the existence of a substantial question of constitutionality must be determined by the allegations of the bill, and the question thus presented may be plainly unsubstantial, either because it is obviously without merit, or because its unsoundness so clearly results from the previous decisions of the Supreme Court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy, and "the District Judge clearly has authority to dismiss for the want of jurisdiction when the question lacks the nec-

essary substance and no other ground of jurisdiction appears."

Three separate corporations join as plaintiffs. The bill alleges they are doing business separately; that the commissioner separately took possession of the property of each. It is at once apparent that a serious question of misjoinder of parties plaintiff is presented, as the facts as to each of the plaintiffs might be different; but in order to avoid delay counsel have requested the court to waive this question.

The first question pressed by plaintiffs is that the building and loan statute, supra, authorizing the commissioner to summarily take possession of the assets and property of the plaintiff, violates the Fourteenth Amendment, in that it deprives them of their property without due process of law. The bill, unfortunately, is deficient in any statements of fact, and abounds in allegations of legal conclusions. No facts are pleaded to show that the controversy as to each of the plaintiffs involves the jurisdictional amount of $3,000 and, after setting forth the statute at some length, the bill merely alleges the legal conclusion that the action of the commissioner violates the plaintiffs' constitutional rights under the Fourteenth Amendment. Furthermore, the bill leaves us in the dark as to what particular rights protected by the Federal Constitution are infringed. Nor is there a showing of solvency, or claim that the defendant commissioner failed to find the plaintiffs guilty of the business practices that, according to section 9, art. 8 (page 340), justify the defendant's action.

But, as pointed out in Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 220, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, we get nowhere by simply declaring that no person shall be deprived of his life, liberty, or property without due process of law, citing Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; that a stricter inquiry is necessary, and one relying upon the Fourteenth Amendment must point out specifically what specific right of property is affected, and why its use and enjoyment may not be regulated.

There is no allegation to the contrary, and it is admitted in the briefs and argument that the commissioner, in all things done, acted in the manner prescribed by the statute; so we conclude that the plaintiffs were organized and doing business pursuant to the act in question under the required certificates of authority. We also take judicial notice of certain provisions of the act in question material to this discussion which are omitted from the bill.

Section 10 of article 8 (page 341) provides that when the commissioner has taken possession of any association, it may apply to the state court to enjoin any further proceedings on his part, and have a full hearing on the facts and law; the court may either dismiss the application or enjoin the commissioner from further proceedings, and direct him to turn back the property and assets to the association, with full right of appeal. Further, section 18, art. 8 (page 350), specifically declares that nothing in the act shall be construed to prevent any association or person affected by the action of the commissioner from testing the validity of the same in any court of competent jurisdiction. So the plaintiffs have, under the act, a right to a plenary judicial review of the actions of the commissioner complained of, but have not availed themselves thereof.

The act in question constitutes a complete Code for the government of building and loan associations, and is identical in most respects to similar statutes of many other states.

Practically all the states of the Union grant state bank commissioners summary power to take possession, close and liquidate state banks when, after an examination, the commissioner is of the opinion that they are insolvent. This power, which is practically identical with that here exercised by the defendant, has never been seriously questioned. The Supreme Court of the United States, in Title Guaranty & Surety Co. v. Idaho, use of Allen, 240 U. S. 136, 36 S. Ct. 345, 60 L. Ed. 566, said that the power of a state to confer upon an administrative officer power to close the doors of a bank, in the event of insolvency without awaiting judicial proceedings, was so clear that to state the proposition was sufficient.

If such a power can be vested in a state officer charged with supervision of state banks, I see no reason why a similar power may not be vested in, and exercised by, an administrative state officer charged with the supervision of building and loan associations, especially where, as here, the commissioner before seizing plaintiffs' property must first make an examination of the association, and obtain the written consent of the Governor of the state and give a good and sufficient bond for the protection of the association. As pointed out in Hall v. Geiger-Jones Co., supra, this is an exercise of the police power

of the state which "is the least limitable of the exercises of government." And, as that case points out, the delegation and exercise of power by executive agencies is one of the most essential and common instrumentalities in our form of government, and where a court review on the facts and law of the commissioner's action is accorded, there is a presumption that the functions entrusted to him "will be executed in the public interest, not wantonly or arbitrarily," etc.

■ The federal courts have never attempted to define "due process of law." Davidson v. New Orleans, 96 U. S. 97, 101, 24 L. Ed. 616. The question depends on the facts presented by each particular case. Nor does it necessarily imply a regular proceeding in a court of justice. State Savings & Commercial Bank v. Anderson, 165 Cal. 437, 132 P. 755, L. R. A. 1915E, 675, affirmed 238 U. S. 611, 35 S. Ct. 792, 59 L. Ed. 1488; Noble State Bank v. Haskell, supra. And as we have seen, supra, it is not necessarily violated by summary seizure of property without judicial authority.

Building and loan associations exercise quasi-banking functions, solicit the savings and funds of the public, especially of those in more modest circumstances. The Legislature violates no constitutional guaranty in declaring them affected with a public interest, and in providing, within proper limits, supervision and control for the protection of the investor.

■ The seizure complained of authorized by this act was made only after due investigation, and with the written approval of the Governor of the state. It is temporary in character, and the defendant holds the property only until a court of competent jurisdiction passes upon the propriety of his action, and determines that the seizure was justified and that liquidation should follow, or directs the return of the property. Thus full protection against arbitrary or ill-considered action on the part of the administrative official is afforded. As stated in Noble State Bank v. Haskell, supra, the Fourteenth Amendment does not prohibit the state, where the public interests so demand, from placing the banking business under legislative control, and prohibiting it except under prescribed conditions. The police power of the state may be extended in aid of that which, by strong and preponderant opinion, is thought to be necessary for the public welfare. It is for the Legislature in the first instance, and not the court, to say what limitations on business or commerce the public welfare requires. Nor

do the guaranties of the Fourteenth Amendment conflict with the principle that all property is held under the implied obligation that the owner's use of it shall not be injurious to the community.

Mosher v. Phœnix, 287 U. S. 29, 53 S. Ct. 67, 77 L. Ed. 148, is pressed by counsel for the plaintiff. There, in a previous suit, the Circuit Court of Appeals had held that the contemplated condemnation proceedings of the city that were complained of were not authorized by the statutes of Arizona, so the court therefore held that a federal question was presented when it was alleged that the action complained of was pursuant to that statute.

In conclusion: the Supreme Court of Colorado in People ex rel. v. Colorado Title & Trust Co., 65 Colo. 472, 178 P. 6, 10, in discussing the powers of the Public Utilities Commission, says: "The Legislature could delegate power to determine the facts and things upon the decision of which the operation of the law is made to depend. * * * The exercise of judgment and discretion as an incident to such power is not the exercise of judicial power within the meaning of the Constitution."

■ The third point urged by plaintiffs is: The power given by the Federal Constitution (article 1, § 8, subd. 4) to Congress to pass a uniform bankruptcy act makes the Colorado building and loan act unconstitutional.

The Bankruptcy Act, however, excepts building and loan associations from its operation (section 4, as amended by Act Feb. 11, 1932 [11 USCA § 22]). This leaves them subject in all respects to the jurisdiction of the state under whose laws they are incorporated, or in which they may seek to do business. It is unnecessary to cite authority to the proposition that the state, in the absence of legislation by Congress, has plenary power to provide for the liquidation of corporations that it creates. The only limitations are the provisions of the Bankruptcy Act which apply only to corporations or individuals that specifically come within its terms. Security Building & Loan Ass'n v. Spurlock (C. C. A.) 65 F.(2d) 768, 769, cited by plaintiffs, discusses the question of whether the association there involved was in fact a building and loan association. In determining that question the court said it must look to the state statutes, because building and loan associations are entirely creatures of state statute; that the Bankruptcy Act ceded jurisdiction over such associations to the state,

with the power to administer their affairs and distribute their assets under state laws and state supervision.

The motion to dismiss should be granted, and it is so ordered.