33 N.J. Super. 115 (1954)
109 A.2d 470
ARTHUR E. SIEBER, DARWIN A. SIEBER, ELMER H. KUEHN, GEORGE WEISE, ANTHONY VIVINO, MATTHEW RIZZO, MICHAEL ARDIS, SAMUEL M. CONFORTH, JOHN LEONE, AND ERNEST A. DEL PRETE, PLAINTIFFS,
v.
HAROLD W. LAAWE, STANLEY O. STYLES, WALTER MODES, OLAF HAROLDSON, JOHN RATCLIFFE, AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WAYNE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 8, 1954.
*118 Mr. Saul M. Mann, attorney for plaintiffs.
Mr. Salvatore J. Ruggiero, attorney for defendants.
Messrs. Greenburg, Wilensky & Feinberg (Mr. Victor Greenburg, appearing), attorneys for intervenor.
DAVIDSON, J.S.C.
This is an action in lieu of prerogative writ, plaintiffs seeking to nullify the adoption of an amendment to the zoning ordinance which permits landscaped administrative offices and laboratories devoted to research as special uses in Residence A and B Districts. Subsequent to the filing of the complaint the U.S. Rubber Company, pursuant to the provisions of the ordinance under attack, made application to the board of adjustment for a permit and approval to erect a research and experimental laboratory, which application was recommended to and thereafter approved by the township committee  it is the holder of the right to acquire ownership of a tract of approximately 98 *119 acres, upon which it intends to erect the laboratory, and by reason of its stated interest, was granted leave to intervene as a party defendant.
The Township of Wayne, in pursuance of a comprehensive plan or scheme, adopted a zoning ordinance (No. 14  1949) under which the township was divided into four classes of districts: Residence A, Residence B, Business and Industrial. Permitted uses and structures in Residence A and B Districts, under sections 3 and 4 of the ordinance, were confined to a single-family dwelling (and customary accessory buildings); a church, public library, public or private school, public park or playground; any form of agriculture or horticulture (with specified exceptions); the sale of farm products on properties where produced; other buildings, structures and uses, as provided by paragraphs (a) and (d) of section 7.
Paragraph (d) of section 7 regulates stationary signs and paragraph (a) permits special uses authorized by the township committee after recommendation by the board of adjustment: a boarding or rooming house or tourist home; a public or quasi-public building; clubhouse; private athletic field; a railway or bus station; a nursing home or hospital for other than mental or contagious diseases; and a telephone exchange or other public-utility building or structure, except a storage yard, garage or repair shop.
The pertinent portions of the amendatory ordinance under attack (No. 1  1954) are as follows (the amendments being indicated by underscoring):
"SECTION 1. That Section 7 entitled `Exceptions and Special Provisions' sub-paragraph (a) of the ordinance to which this is an amendment be and the same is hereby revised and amended to read as follows:

(a) SPECIAL USES PERMITTED.
Under special conditions set forth below, the Board of Adjustment as hereinafter created, after public notice and hearing, may recommend in writing to the Township Committee and the Township Committee may authorize the issuance of a permit for any of the following buildings and uses:
1. In a Residence `A' or Residence `B' District, a boarding or rooming house or tourist home; a public or quasi-public building; *120 clubhouse, private athletic field; a railway or bus station; a nursing home or hospital for other than mental or contagious diseases; and a telephone exchange or other public-utility building or structure, except a storage yard, garage or repair shop; also, landscaped administrative offices, laboratories devoted to research, design and/or experimentation and processing and fabrication incidental thereto and appurtenant buildings consistent with and designed to promote and benefit the value and use of property in residence districts or in areas which are predominantly residential although partly lying in less restricted districts, providing no materials or finished products shall be manufactured, processed or fabricated on said premises for sale, except such as are incidental to said laboratory research, design or experimentation conducted on said premises, and further providing that any project for such landscaped administrative offices and research laboratories:
(a) shall occupy a plot not less than fifty (50) acres;
(b) not more than 25 per cent of such plot shall be occupied by buildings;
(c) the buildings upon such plot other than the entrance gate houses shall be set back not less than one hundred feet (100') from the nearest property line and not less than two hundred feet (200') from the nearest street line;
(d) shall not constitute a nuisance by reason of odor, smoke, dust or noise;
(e) shall not constitute an unusual hazard of fire, explosion or air pollution;
(f) shall provide an automobile parking area on the premises calculated to accommodate not less than one car for each two employees working during a working period;
(g) The Board of Adjustment shall be further guided in determining whether or not to recommend the special use of property under the provisions hereof, by taking into consideration and account such things as capacity of streets and roads, public services to serve the applicant's requirements, the general welfare of the neighborhood and the community, provision for surrounding open spaces and treatment of grounds and other necessary safeguards to preserve the public health, comfort and convenience, and without substantial detriment to the public good.
SECTION 2. That Section 7 entitled `Exceptions and Special Provisions' of the ordinance to which this is an amendment, be and the same is hereby further revised and amended to include sub-paragraph (b), to read as follows:

(b) PUBLIC NOTICE AND HEARING.

Notice and public hearing as provided for in sub-paragraph (a) of Section 7 entitled `Exceptions and Special Provisions' shall be required in the same manner as prescribed by Section 8 entitled `Administration' sub-paragraph (h), for appeals to the Board of Adjustment."
*121 The purpose and effect of the amendment is to add landscaped administrative offices and laboratories devoted to research as permitted special uses under the conditions set forth.
Plaintiffs contend that the amendatory ordinance is not in accordance with the comprehensive plan for zoning, is an attempt to grant a variance for the benefit of an individual property owner, and constitutes "spot zoning," that the ordinance was not adopted in the interests of public welfare and is not in furtherance of any of the statutory purposes and objectives of zoning; that it violates statutory requirements for uniform regulations and permits incompatible uses; that its adoption was capricious, arbitrary and an abuse of discretion; and that there was a failure to comply with the statutory requirements in the adoption of the amendment.
The New Jersey Constitution, 1947, Art. IV, Sec. VI, par. 2, recognizes "zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to * * * the nature and extent of their use, * * *" as being "within the police power of the State," and, under Art. IV, Sec. VII, par. 11, requires liberal construction of the provisions of this Constitution and of "any law concerning municipal corporations formed for local government" in favor of the municipality, "not inconsistent with or prohibited by this Constitution or by law."
N.J.S.A. 40:55-2 (Construction of article) provides:
"In construing the provisions of this article all courts shall construe the same most favorably to municipalities, it being the intention hereof to give all municipalities the fullest and most complete powers possible concerning the matters provided for under this article."
N.J.S.A. 40:55-31 (Creation of districts; uniformity of regulations) provides:
"For any or all of said purposes the governing body or board of public works may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this article, and it may regulate and restrict the erection, *122 construction, reconstruction, alteration, repair, or use of buildings or other structures within such districts.
All such regulations shall be uniform for each class or kind of buildings or other structures throughout each district, but the regulations in one district may differ from those in other districts."
N.J.S.A. 40:55-32 (Purposes of zoning; essential considerations) provides:
"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
The question presented for determination is whether the classification under the amended zoning ordinance bears a reasonable and just relation either to a general object of the legislation or to some substantial consideration of public policy or convenience or the service of the general welfare. If it does, the classification is proper. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 88 A.2d 607 (1952).
Wayne Township is approximately 25 square miles in area and is generally classified as rural residential with some industry, although it is 80% undeveloped land; its population in 1940 was 6,868, in 1950, 11,815, and in April, 1954, 17,800; tax ratables in 1940 were $9,787,793, which had increased to $14,487,510 in 1950 and to $22,216,615 in 1953; the tax rate was $2.92 in 1940, increasing to $4.91 in 1949 and $5.39 in 1953. By reason of large school appropriations, the township exceeded its legal borrowing power in December 1953. While there were originally 42 tracts of 50 acres or more in the township, the number has been reduced to 34 by reason of subdivision and development, some of these requiring title assembly as they are not all in one ownership. *123 The township is unsuited for large industrial development or manufacturing as natural resources and rail facilities are insufficient and the terrain is such that the industrial zone is largely swampy and low land.
Research laboratories are a relatively new development and there is nothing to indicate that such construction and use was considered in the adoption of the zoning ordinance of 1949. Actually, plaintiffs concede the desirability of such laboratories within the municipality, but they dispute the method of accomplishing the purpose. They contend that a separate zone should have been set up to permit such use, and that the excepted use in residential districts under the special provisions of the amendatory ordinance is improper. While our reported cases fail to disclose a similar situation, plaintiffs' precise contentions were considered and determined adversely with respect to a parallel situation in Nappi v. LaGuardia, 184 Misc. 775, 55 N.Y.S.2d 80 (Sup. Ct. 1944), affirmed Appellate Division, 269 App. Div. 693, 54 N.Y.S.2d 722 (1945), affirmed Court of Appeals, 1945, 295 N.Y. 652, 64 N.E.2d 716 (1945). This case, too, was an attack upon a zoning amendment, adopted under regulations having substantially the same objectives as set forth by our Legislature in N.J.S.A. 40:55-32, the amendment adding to the list of permissible uses, in districts already zoned for residence, a new subdivision, providing for administrative offices and laboratory uses under conditions and safeguards, not theretofore permitted.
Zoning regulations cannot be static, fixed or rigid, but must be flexible and subject to change in the light of changing conditions. The evidence established that the township had for years considered and discussed an ordinance to permit laboratories; that it was desirable to balance the municipality, provide a better economic base and develop vacant lands; that the planning board, after full investigation, considered laboratories a preferential, not an industrial use, and, for the reasons set forth at length in its report and recommendation to the township committee, determined the amendment to be compatible with and in furtherance of the comprehensive *124 plan in promoting general welfare and the best use of the land. The evidence further demonstrates that any 50-acre tracts located outside the residential zones are comprised of swampy and lowlands, and thus unsuitable for laboratory use. A special zone to permit such use would, therefore, necessarily have to be carved from the residential zone. The testimony of qualified zoning experts indicates that the present trend is to general regulation which permits adoption to changing conditions by the excepted use method; that laboratory use is consistent with other special uses already permitted in residential zones and the amendment constituted sound zoning both as to objective and method; that a separate zone was not set up because the land areas were not suitable and it was impossible to foresee future requirements; that the amendment was uniform with respect to its regulations and did not apply to any specific parcel of land; that it was in furtherance of the comprehensive plan and the standards and safeguards therein set forth were wholly adequate; that the amendment promotes the legislative objectives and will enhance land values generally throughout the township and the immediate adjacent residential area by reason of the large, open, park-like, landscaped area required.
A zoning ordinance is presumed to be reasonable and one attacking ordinance as unreasonable has burden of proof. Ridgewood Air Club v. Board of Adjustment of Village of Ridgewood, 136 N.J.L. 222, 55 A.2d 100 (Sup. Ct. 1947); Scarborough Apartments, Inc., v. City of Englewood, 9 N.J. 182, 87 A.2d 537 (1952); Yanow v. Seven Oaks Park, 11 N.J. 341, 94 A.2d 482 (1953); Crow v. Town of Westfield, 136 N.J.L. 363, 56 A.2d 403 (Sup. Ct. 1948); Pequannock Township v. DeWilde, 21 N.J. Super. 517, 91 A.2d 410 (App. Div. 1952).
In Lionshead Lake, Inc., v. Wayne Township, 10 N.J. 165, 89 A.2d 693 (1952), the court held that:
"We are bound by these changes in our organic law and accordingly this court in Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 88 A.2d 607 (1952), has held that so long as the zoning ordinance was reasonably designed, by whatever means, to further the *125 advancement of a community as a social, economic and political unit, it is in the general welfare and therefore a proper exercise of the zoning power."
Schmidt v. Board of Adjustment of City of Newark, supra, is an exhaustive review of the municipal power to enact ordinances to promote the general welfare and must control the determination here. It was there held that:
"Zoning and kindred regulations `find their justification in some aspect of the police power, asserted for the public welfare.' Euclid [Ohio] v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926). The police authority does not lend itself to expression in terms of a definitive formula that will automatically resolve every case, for its quality and scope are commensurate with the public exigencies arising from ever-changing social and economic conditions. * * * The public right of reasonable regulation for the common good and welfare is denominated the police power. Generally, the authority coincides with the public need. As said by Chief Justice Shaw: `It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise.' Commonwealth v. Alger, 7 Cush. 53, 84 (Sup. Jud. Mass. 1851). The essential content and meaning of the police power and the related constitutional guaranties remain the same; but the application of the power of necessity varies with changing needs and conditions pertaining to the public health, safety, morals, or general welfare. It sanctions measures commensurate with the common material and moral needs; and the correlative restrictions upon individual rights  either of the person or of property  are mere incidents of the social order, considered a negligible loss compared with the benefits accruing to the community as a whole. Indeed, it is to be presumed that a fully compensating individual advantage ensues from the general betterment. While some of the earlier cases seemingly confine the authority to such regulations as are needful for the public health, the public safety, and the public morals, such measures as are fairly requisite for the `public convenience' and the `general prosperity' are now considered as within the category. * * * The police power has been termed `one of the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government.' District of Columbia v. Brooke, 214 U.S. 138, 29 S.Ct. 560, 563, 53 L.Ed. 941 (1909). To the same effect: Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112 (1911); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); Miller v. Schoene, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928).
The exercise of the power is contained by the rule of reason. Arbitrary action is inadmissible. There must be a substantial *126 connection between the means invoked and the public interest designed to be advanced. The inquiry is whether, considering the end in view, the measure `passes the bounds of reason and assumes the character of a merely arbitrary fiat.' Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192, 204, 33 S.Ct. 44, 47, 57 L.Ed. 184, 188 (1912). It is requisite that there be a rational relation between the regulation and the service of the common welfare in an area within the reach of the police power, and that the means be reasonable and appropriate to that end. Restraints upon property cannot be unreasonable or unduly discriminatory. A police regulation that goes beyond the public need is not effective to curtail the basic rights of person or of private property made the subject of constitutional guaranties. But where the subject is comprehended in the police power of the state, debatable questions as to the reasonableness of the measure are not for judicial cognizance. Reingold v. Harper [6 N.J. 182 (1951)]. If, for example, the validity of a zoning classification be fairly debatable, the legislative judgment prevails. Euclid [Ohio] v. Ambler Realty Co., cited supra; Radice v. People of State of New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1924). * * *
* * * It is fundamental in the constitutional and statutory zoning process that all property similarly circumstanced be treated alike. Brandon v. [Board of Com'rs of Town of] Montclair [124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940)]; Phillips v. Township Council of [Township of] Teaneck, 120 N.J.L. 45 (Sup. Ct. 1938), affirmed 122 N.J.L. 485 (E. & A. 1939); Appley v. [Township Committee of] Bernards Township, 128 N.J.L. 195 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942); 128 A.L.R. 740; 149 A.L.R. 292. But certain uses may be made the subject of an exception where needed to serve the public comfort, convenience and welfare. Higbee v. Chicago, B. & Q.R. Co., 235 Wis. 91, 292 N.W. 320, 128 A.L.R. 734 (Sup. Ct. 1940); Marshall v. Salt Lake City, 105 Utah 111, 141 Pac.2d 704, 149 A.L.R. 282 (Sup. Ct. 1943). Where the special use is reasonably designed to advance the common good and welfare rather than purely private interests, the regulation is not classable as indiscriminate spot zoning at odds with the essence of the delegated zoning authority and therefore an excess of power. * * *
* * * It suffices if the classification bear a reasonable and just relation either to the general object of the legislation or to some substantial consideration of public policy or convenience or the service of the general welfare. If that be the case, the action taken is not arbitrary or discriminatory in the invidious sense. Washington National Insurance Co. v. Board of Review, 1 N.J. 545 (1949)."
As the amendatory ordinance treats all similarly circumstanced property alike, the charge of "spot zoning" is not supported. Schmidt v. Board of Adjustment of City of Newark, supra. The evidence sustains defendants' contention *127 that the amendatory ordinance is designed to promote the general welfare of the municipality, and plaintiffs have failed to establish that the unanimous action of the municipal board and governing body in the recommendation and passage of the amendment was either capricious, discriminatory or unreasonable.
Even if a debatable question as to the reasonableness of the measure can be said to be presented, it is not for judicial cognizance, and the court may not substitute its judgment for that of the municipal legislative body. Schmidt v. Board of Adjustment of City of Newark, supra; Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951), affirmed 9 N.J. 294, 88 A.2d 201 (1952).
Judgment, accordingly, for defendants.