J. H. THERRELL, as Liquidator of the Bank of Bay Biscayne, v. R. F. SMITH.

168 So. 389.

Opinion Filed April 30, 1936.

Rehearing Denied May 27, 1936.

*Kehoe & Kehoe,* and *S. J. Barco,* for Petitioners;
*Botts & Field,* for Respondent.
*Sanders & Maxwell,* as *amici curiae.*

BUFORD, J.—Suit was filed in the Civil Court of Record of Dade County by Therrell as Liquidator against R. F. Smith as stockholder of Bank of Bay Biscayne to enforce the payment of 100% assessment made by the Comptroller against stockholders of the defunct bank. It was alleged that on and before January 31, 1930, the defendant was the owner of 20 shares of the capital stock of the Bank of Bay Biscayne. That on that date he transferred the stock to one Gordon A. Medcalfe as Trustee; that the said Trustee had denied any liability by reason of said assessment on said stock and refused to pay said assessment, or any part of it.

It is further alleged that the Bank of Bay Biscayne failed to open for business on June 11, 1930, and it was immediately thereafter taken over by the Comptroller for liquidation and a liquidator was appointed.

It is alleged that the transfer of the stock by Smith to Medcalfe as trustee within six months prior to the failure of the Bank and that the defendant was liable for the stock assessment under the provisions of Chapter 13576, Acts of 1929, and particularly Section 3 thereof, being Section 6059, Compiled General Laws of Florida.

It is alleged that the defendant was liable for the assessment of $2,000.00 on said stock.

Demurrer was filed to the declaration. The demurrer

presented the following contentions: (1) that defendant was not liable on the stock assessment because the defendant acquired the stock prior to the enactment of Chapter 13576, Laws of 1929, and that at the time the stock was acquired by defendant the statutes in this regard did not impose a liability on persons who transferred their stock in banking corporations within six months prior to the failure of the banking institution; (2) that Section 3 of Chapter 13576, *supra,* was and is unconstitutional because said Act of 1929 was retrospective in its nature and attempted to impair the obligation of a contract.

The demurrer was sustained.

The plaintiff amended his declaration by setting forth the date the stock was acquired from the banking corporation by the defendant. Demurrer was interposed to the amended declaration which was substantially as the original demurrer, except that it specifically alleged that the defendant acquired the stock prior to the date when Chapter 13576, Acts of 1929, became effective.

Demurrer to amended declaration was sustained and the plaintiff announcing that it would not further amend its declaration, judgment was entered in favor of the defendant.

Writ of error was taken to the Circuit Court.

The judgment was affirmed.

The case is now before us on certiorari.

There are two questions for us to determine. The first is whether or not the provisions of Chapter 13576, *supra,* continue the liability of a stockholder to answer a stock assessment interposed by the Comptroller for the benefit of the creditors of a defunct banking corporation when such stockholder is shown to have transferred his stock within six months prior to the date of the closing of the bank and the taking over of the same by the Comptroller. This ques-

tion has been definitely answered adversely to the contentions of the defendant in the case of McCarthy v. Smith, 116 Fla. 757, 156 Sou. 908, wherein we held:

"It is contended by appellant that the word 'or' between the words 'obligations' and 'with' should be read 'and.' This construction would change the whole meaning of the sentence. Our view is that it was the intent of the statute to make transfer of stock within six months prior to the failure of a bank inoperative to relieve the transferring stockholder from liability, regardless of the knowledge of such stockholder of the condition of the bank and it went further and provided definitely for what might have been the law without that provision, that a transfer of stock by a stockholder with knowledge of impending failure of the bank, whether within six months or any other period, should not be operative or effectual to relieve the transferring stockholder of the statutory liability for an assessment which should be made pursuant to such failure. Such transfer would be a fraud upon creditors of the bank and if the person to whom it was assigned took it without knowledge of such impending failure it would be also a fraud upon the assignee, if effectual."

The next question to be determined is whether or not the provisions of Section 3 of Chapter 13576, *supra,* the pertinent part of which is: "Stockholders who shall have transferred their shares or registered the transfer thereof within six months next before the date of the failure of such company to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have

against those in whose names such shares are registered at the time of such failure. Provided the seller shall have notified the Bank in writing by registered mail or taken receipts from bank therefor," is such an impairment of the obligation of contract as to be inapplicable to a transfer of stock by a stockholder when the stock so transferred was acquired by such stockholder prior to the enactment of Chapter 13576, *supra*.

It is well settled that when the constitutionality of a statute is attacked, and the statute will bear two constructions, one of which will render it unconstitutional and the other constitutional, it is the duty of the courts to adopt the latter construction. That part of the statute here under consideration is remedial in its nature and does not create a liability but extends a liability already created by the ownership of the bank stock.

The provisions of Chapter 11849, Acts of 1927, authorizing the Comptroller to freeze deposits is in its application and operation analogous to the statute there under consideration. In the case of McConville v. Ft. Pierce Bank & Trust Co., 101 Fla. 727, 135 Sou. 392, in which it appeared that McConville had filed suit against Ft. Pierce Bank & Trust Co. to recover a deposit and the bank had filed a plea setting forth that on August 20, 1927, the Comptroller took possession of the defunct Bank and later, on March 26, 1928, on petition of 75% of the total depositors issued his formal order under the statute above referred to, freezing deposits of the Bank and providing that Bank should pay 5% of the deposits in cash on reopening, 45% of certificates of deposit due and payable on or before three years after date of reopening, and that the remaining 50% of deposits of any nature whatsoever to be paid on or before three years of the reopening from the

proceeds obtained from the slow and doubtful paper assets to be classified and set aside for the benefit of such deposits.

The plea further alleged that defendant was ready at any time to pay the 5% in cash and deliver certificates of deposit and comply with other provisions of the order and the statute authorizing such order.

A demurrer to the plea attacked Chapter 11849, *supra,* as being unconstitutional, amongst other grounds, upon the ground that the Act impairs the obligation of a contract and that the plea does not allege that the deposit was made by the plaintiff subsequent to the time that Chapter 11849, *supra,* went into effect. The demurrer was overruled and, the plaintiff electing to stand on the demurrer, final judgment was entered dismissing the case. The judgment was affirmed here. We said:

"It is also insisted that the Act of 1927 has the effect of impairing the obligation of contracts. Since 1913, the section in question has retained the provision that pending the possession by the Comptroller and until the affairs are placed in a sound and safe condition or a receiver is placed in control, 'all the remedies at law or in equity of any creditor or stockholder against any such bank, banking company or banker shall be suspended' etc.; and it has been held that the relation of creditor and debtor always exists as between a depositor and the bank in the absence of special contract or rules to the contrary. Bryan v. Coconut Grove Bank & Trust Co., 132 So. 481; Miami v. Shutts, 59 Fla. 461, 51 So. 929.

"It is well established that all contracts are inherently subject to the paramount powers of the sovereign and the exercise of such power is never understood to involve their violation. The statute here involved is not within the provisions of the Constitution forbidding a State to

pass laws impairing the obligation of contracts. See Osborn v. Nicholson, 13 Wall. 654, 20 Law Ed. 689, and cases cited.

"It was therefore not essential that the plea of defendant allege that the money sued for was deposited in the bank subsequent to the enactment of said Chapter 11849, Acts of 1927. As a matter of record, the freezing order was made March 22, 1928, over ten months after said Act of 1927 became a law and it must be presumed that complainant's deposit was either made before the Act became a law and was allowed to remain, or that it was made after it became a law, and in either event the deposit would be subject to its provisions. (262 U. S. 649, 67 L. Ed. 1157).

"Banks have become indispensable agencies through which industry, trade and commerce are carried on, and while they exist mainly for private profit it cannot be denied that they are pre-eminently of a public nature and therefore universally recognized as a corporation of a quasi-public nature and subject to statutory regulation for the protection of the public. See 3 R. C. L. 379, 5; Noble State Bank v. Haskell, 219 U. S. 104, 575, 31 S. Ct. 186, 299, 55 L. Ed. 112, 341, Ann. Cas. 1912A 487, 32 L. R. A. (N. S.) 1062; Bryan v. Bullock, 84 Fla. 179, 93 So. 182."

In Southern Utilities Co. v. City of Palatka, 86 Fla. 583, 99 Sou. 236, it was held:

"Section 30, Article XVI of the Florida Constitution is as follows: 'The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures.' In construing this.

organic provision, this Court has said: 'The power mentioned in this section is full power; a continuing, ever present power. Being irrevocably vested by this section, the Legislature cannot divest itself of it. Neither can it bind itself by contract, or authorize a municipality, one of its creatures—to bind it by contract, so as to preclude the exercise of this power whenever in its judgment the public exigencies demand its exercise. Full power cannot exist, if by contract that power can be curtailed or impaired. Without this section this power to regulate rates would exist under the general grant of legislative power in Section 1, Article III, but such power could be surrendered by a contract made by the State or by a municipality by its authority. With this section in force the power to surrender by contract the right to regulate rates is taken away, for the authority to surrender cannot co-exist with the ever-present continuing power to regulate, which is declared by this section to exist in the Legislature. The section in question does not operate to prevent the Legislature from making contracts itself, nor from authorizing municipalities to make them and in and by such contracts stipulating for certain rates which will be valid and binding obligations so long as the 'Legislature does not exercise or authorize municipalities to exercise the power to prevent excessive charges, which is declared by the section to be vested in the Legislature. But every charter granted and every contract made by the Legislature or by a municipality under its authority, are accepted and made subject to and in contemplation of the possibility of the subsequent exercise of the power to prevent excessive charges which by this section is unalterably and irrevocably vested in the Legislature. The section not only becomes a part of every such contract, as much so as if written therein, but by implication it denies

the authority of the Legislature to bind itself either by a contract of its own making, or one made by a municipality under its authorization, not to exercise the power thereby recognized whenever in its wisdom it should think necessary so to do. City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631."

It is true that at the time this particular bank stock was purchased by Smith the statute did not prohibit the transfer of the stock within six months prior to the failure of the bank, but the statute did place the liability of stock assessment against the stockholder to the extent of 100% of the face value of the stock and the Act of 1929 provided that that liability should continue to stand against the stockholder if the transfer of the stock should be made by him within six months prior to the failure of the bank. The stock here involved was transferred after the 1929 Act became effective and, therefore, that transfer was made subject to the provisions of the 1929 Act which the Legislature had passed in the exercise of the police power of the State of Florida. If the transfer had been made prior to the effective date of the 1929 Act and the failure of the bank had occurred after the effective date of the Act, but within six months of the date of the transfer of the stock, the Act would not have been effective to have continued the liability of the stockholder so transferring his stock because the transfer would have been made in the light of the law as it then existed. As the transfer was made after the effective date of the law, the transfer was made in the light of the law as it then existed.

The defendant has contended at some length that the proviso contained in Section 3 of Chapter 13576, *supra,* is such as to nullify the preceding provisions of the Act herein discussed. We do not agree with this contention.

It is a well established rule that in construing a statute the Court must ascertain and give effect to the legislative intent and that this construction applies to provisos as well as to other parts of the legislative Act. A proviso should be construed together with the enacting clause and with a view to giving effect to each part of the Act and to carrying out the intention of the Legislature as manifest by the entire Act and other Acts in *pari materia*. Where by reason of omission or by accidental mistake in the use of words, the proviso can be given no sensible effect, it will be disregarded. See 59 C. J. 1088 and cases there cited. Also 25 R. C. L. 896 and cases there cited. The proviso in this Act is so worded that it cannot be with certainty said to mean any particular thing and, therefore, it should be entirely disregarded.

For the reasons stated, the judgment of the Circuit Court is quashed.

WHITFIELD, C. J., and TERRELL and DAVIS, J. J., concur. BROWN, J., disqualified.

### ON PETITION FOR REHEARING.

BUFORD, J.—In this case petition for rehearing has been filed in which it is contended that the Court in rendering the opinion herein failed to consider the fact that the defendant in the court below acquired the stock of the Bank of Bay Biscayne involved in this case prior to the enactment of Chapter 13,576, Acts of 1929, and it is contended that because of this fact the provisions of Section 3 of Chapter 13,576, Acts of 1929, cannot be held legally applicable to defendant's transfer of his stock, although the transfer was made several months after the passage of that Act.

Chapter 13,576, Acts of 1929, was approved on May 31st, 1929. Section 3 of that Act. amended Section 4128 R. G. S., of Florida, to read as follows:

"LIABILITY OF STOCKHOLDERS. Stockholders of every banking, savings and trust company, shall be held individually responsible equally and ratably and not for one another for all contracts, debts and engagements of such company to the extent of the amount of their stock therein at the par value thereof in addition to the amount invested in such shares. Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liability as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in trust funds would be if living and competent to hold the stock in his own name. Stockholders who shall have transferred their shares or registered the transfer thereof within six months next before the date of the failure of such company to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such share holders might otherwise have against those in whose names such shares are registered at the time of such failure. Provided the seller shall have notified the bank in writing by registered mail or takes receipt from bank therefor."

The amendatory language of that section was that part of the section now reading as follows:

"Stockholders who shall have transferred their shares or registered the transfer thereof within six months next before the date of the failure of such company to meet its obligations or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee

fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such share holders might otherwise have against those in whose names such shares are registered at the time of such failure. Provided the seller shall have notified the bank in writing by registered mail or taken receipt from bank therefor."

It will, therefore, be observed that the liability of stockholders under Section 4128 R. G. S. was never increased or diminished by the provisions of Section 3 of Chapter 13,576, Acts of 1929. The effect of the amendment was not to impair the obligation of the contract, nor should it be construed to place any additional burden on the stockholder of a banking institution. The effect of the amendment was to prevent or preclude the stockholder upon whom rested the obligation created by his contract in connection with Section 4128 R. G. S., from divesting himself of that liability to the detriment of other stockholders and creditors of the bank. The amendatory part of the section controlled the force and effect of future contracts which the stockholder might make in the effort to transfer his stock and avoiding his liability as a stockholder.

There might be some doubt as to the application of the statute in a case where a transfer of stock was made after the passage of the Act and where the failure of the Bank occurred within six months after the passage of the Act because in such case the stockholder would be in practically the same condition as he would have been in had he transferred the stock before the passage of the Act. But, in this case the record shows that the transfer of stock oc curred on January 31, 1930, which was more than six mosths after the Act was approved, and the failure of the Bank occurred on June 11, 1930, which was more than a year after the approval of the Act.

The force and effect of the Act here under consideration is analogous to the force and effect of the Act which we had under consideration in the case of McConville v. Fort Pierce Bank & Trust Co., 101 Fla. 727, 135 So. 392. In that case we said:

"It is well established that all contracts are inherently subject to the paramount powers of the sovereign and the exercise of such power is never understood to involve their violation. The statute here involved is not within the provisions of the Constitution forbidding a State to pass laws impairing the obligation of contracts. See Osborn v. Nicholson, 13 Wall. 654, 20 Law Ed. 689, and cases cited.

"It was, therefore, not essential that the plea of defendant allege that the money sued for was deposited in the bank subsequent to the enactment of said Chapter 11,849, Acts of 1927. As a matter of record, the freezing order was made March 22, 1928, over ten months after said Act of 1927 became a law and it must be presumed that complainant's deposit was either made before the Act became a law and was allowed to remain, or that it was made after it became a law, and in either event the deposit would be subject to its provisions. (262 U. S. 649, 67 L. Ed. 1157.)

"Banks have become indispensable agencies through which industry, trade and commerce are carried on, and while they exist mainly for private profit, it cannot be denied that they are pre-eminently of a public nature and therefore universally recognized as a corporation of a quasi-public nature and subject to statutory regulation for the protection of the public. See 3 R. C. L. 379, 5; Noble, State Bank v. Haskell, 219 U. S. 104, 575, 31 S. Ct. 186, 299, 55 L. Ed. 112, 341, Ann. Cas. 1912A 487, 32 L. R. A. (N. S.) 1062; Bryan v. Bullock, 84 Fla. 179, 93 So. 182."

The purpose of the Act here under consideration, as here-

tofore stated, was to protect stockholders and creditors of banking institutions in this State. It was a proper exercise of the police power.

While banks exist mainly for private profit, they are necessarily institutions of a public nature and are universally recognized as being subject to statutory regulation for the protection of the public. McConville v. Ft. Pierce Bank & Trust Co., *supra,* and cases there cited. This being true, it must be understood that contracts with such institutions are made subject to the possible exercise of legal governmental authority in the enactment of laws touching the same and no obligation of contract can extend to defeat the exercise of legitimate police power. See Kingston v. Old National Bank of Centralia, 359 Ill. 192, 194 N. E. 211; Tampa Northern Ry. Co. v. City of Tampa, 91 Fla. 241, 107 So. 364; Southern Utilities Co. v. City of Palatka, 86 Fla. 583, 99 So. 236; New York & England Ry. Co. v. Town of Bristol, 151 U. S. 256, 38 L. Ed. 269.

And so we hold that the provisions of Chapter 13576, Acts of 1929, insofar as the same are involved here are constitutional and valid and the provisions hereinbefore quoted are applicable in the instant case.

Petition for rehearing denied.

WHITFIELD, C. J., and TERRELL and DAVIS, J. J., concur.