**Margaret E. GRUVER, Appellant,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**No. 22565.**

United States Court of Appeals District of Columbia Circuit.

Submitted March 28, 1969.

Decided Oct. 8, 1969.

Certiorari Denied March 9, 1970. See 90 S.Ct. 1092.

Miss Margaret E. Gruver, appellant pro se, submitted on the brief.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., at the time the brief was filed, and Mrs. Ellen Lee Park, Asst. U. S. Atty., were on the brief, submitted on the brief for appellee.

Before BAZELON, Chief Judge, and BURGER * and ROBINSON, Circuit Judges.

### SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

Since August, 1960, appellant has received old-age insurance benefits under Title II of the Social Security Act.[1] For 1965 and 1966, her wage earnings exceeded the statutory maximum of $125 per month an individual could then make without an automatic reduction in the monthly benefits payable.[2] Although appellant submitted timely reports of those earnings, the Social Security Administration did not decrease her benefits, and thereby overpaid $178 during 1965 and $603 during 1966.

To rectify the overpayments, the Administration invoked its statutory authority to make "proper adjustment * * * by * * * decreasing subsequent payments" to appellant.[3] The 1965 overpayment of $178 was corrected during 1966 by the return of checks covering benefits for two months together with an offset against benefits payable for two others, and no question as to the legality of these adjustments is raised. The Administration, however, recouped the 1966 overpayment of $603 by offsetting that amount against sums otherwise payable as benefits in 1967. The circumstance highlighting that recovery is that appellant's wage earnings for the entire year 1967 totaled only $48, although during that year she made more than $3,000

---

* Circuit Judge (now Chief Justice) Burger did not participate in the disposition of this case.

1. 42 U.S.C. §§ 401 et seq. (1964).

2. See text *infra* at notes 7–9.

3. Social Security Act § 204(a), 42 U.S.C. § 404(a) (1964).

from stock transactions and also received unemployment compensation.

After completion of the administrative proceedings, appellant sued in the District Court to assert the claim that recapture of the $603 overpayment was statutorily foreclosed during the period —the whole of the year 1967—that her earned wages fell beneath $125 per month. That position was predicated upon a proviso in Section 203(f) (1) (D) of the Act[4] which, for purposes of calculating the amounts of monthly old-age insurance benefits payable, then barred the charge of excess earnings[5] against any month in which a beneficiary's wage earnings did not exceed $125. The court granted summary judgment against appellant on the theory that Sections 204(a) and 204(b)[6] specified the rules governing recoveries and adjustments of old-age insurance overpayments, and that the rules so prescribed did not produce the result for which appellant contended. We affirm.

## I

The Act sets the criteria for determining entitlement to monthly old-age insurance benefits and fixes the conditions that serve to diminish the benefits. Old-age insurance is retirement insurance and one such condition is excess earnings from employment. For the years relevant to this litigation, excess earnings were all wages greater than the product of $125 times the number of months in which wage income was greater than that amount.[7] One-half of excess earnings up to $1,200 per year, and all excess earnings over that annual sum, were charged against benefits.[8] Excess earnings are charged successively against the monthly benefits next accruing until the excess is eliminated or the year comes to an end.[9]

Section 203(f) (1) (D) of the Act, however, imposes a significant limitation on the operation of this formula. During the relevant period it specified that despite the general rules "no part of the excess earnings of an individual shall be charged to any month * * * in which such individual * * * did not render services for wages * * * of more than $125."[10] Where the earning pattern of an old-age insurance beneficiary is expected to be such that benefits for particular months must be lowered or cancelled, an overpayment may be avoided by withholding some of the monthly checks or by stepping down all checks proportionately.[11] To this end, an estimate of anticipated earnings may be required.[12]

Where, however, there is an overpayment, Section 204(b) provides for waiver of its repayment if the recipient is without fault and collection of the overpayment "would defeat the purpose of [Title II of the Act] or would be against equity and good conscience."[13]

---

4. 42 U.S.C. § 403(f) (1) (D) (1964), discussed *infra.*

5. See text *infra* at note 10.

6. 42 U.S.C. §§ 404(a)–(b) (1964).

7. Social Security Amendments of 1965 § 310, 79 Stat. 380 (1965), amending § 203(f) (3), 42 U.S.C. § 403(f) (3) (1964).

8. *Id.*

9. Social Security Act § 203(f) (1), 42 U.S.C. § 403(f) (1) (1964).

10. 42 U.S.C. § 203(f) (1) (D) (1964). The limitation on wage earnings has been increased to $140. (Supp. IV 1969).

11. 20 C.F.R. § 404.456 (1969).

12. Pursuant to the authority granted the Secretary in § 203(h) of the Act, 42 U.S.C. § 403(h) (1964), to prescribe regulations concerning the manner in which earnings are to be reported, 20 C.F.R. § 404.455(a) (1969) was promulgated. That regulation provides that the Administration may request a beneficiary to make declarations of his estimated earnings during the taxable year.

13. "There shall be no adjustment or recovery by the United States in any case where incorrect payment has been made to an individual who is without fault * * *, and where adjustment or recovery would defeat the purpose of this * * * [title] or would be against equity and good conscience." 42 U.S.C. § 404(b) (1964).

The Administration has implemented this provision by regulations defining the phase "defeat the purpose of [T]itle II" in terms of a "defeat [of] the purpose of benefits" under Title II, that is, a deprivation "of income required for ordinary and necessary living expenses."[14] So, under the regulations, whether reclamation of an overpayment will defeat statutory objectives "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs."[15] Conformably, the regulations provide that "[a]djustment or recovery generally will defeat the purposes of [T]itle II in (but is not limited to) situations where the overpaid person needs substantially all of his current income (including social security monthly benefits) to meet his current ordinary and necessary living expenses."[16]

The Administration has similarly undertaken a definition of the statutory phrase "against equity and good conscience." A regulation makes it known that adjustment or recovery of an overpayment will be so considered "if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right * * * or changed his position for the worse * * *."[17] And "[i]n reaching such a determination," the regulation continues, "the individual's financial circumstances are irrelevant."[18]

So it is that recipients of old-age insurance overpayments not attributable to their own fault[19] may achieve complete exoneration from a responsibility for repayment. The regulations safeguard against the recipient's loss of income needed to accommodate current ordinary and necessary living expenses and, irrespective of personal financial circumstances, against detrimental consequences of a change of position. But where the conditions prerequisite to waiver are lacking, Section 204(a) mandates that "proper adjustment shall be made, under regulations prescribed by the Secretary, by increasing or decreasing subsequent payments to which such individual is entitled."[20] The regulations prescribe the general rule that the person overpaid shall receive no further benefits until the overpayment is fully retrieved. There is no provision for deferring repayment, and repayments can be spread only in accordance with stated criteria.[21]

## II

In identifying the precise issues and the specific arguments presented by appellant, we have, within the limits tolerated by an orderly functioning of judicial machinery, extended to her, as a litigant *pro se*, a liberal construction of her suit papers. We find three questions raised, only one of which requires extended consideration.[22] That one springs from

14. 20 C.F.R. § 404.508(a) (1969).

15. *Id.*

16. 20 C.F.R. § 404.508(b) (1969).

17. 20 C.F.R. § 404.509 (1969).

18. *Id.*

19. "An individual will not be 'without fault' if the Administration has evidence in its possession which shows either a lack of good faith or failure to exercise a high degree of care in determining whether circumstances which may cause deductions from his benefits should be brought to the attention of the Administration by an immediate report or by re-

turn of a benefit check." 20 C.F.R. § 404.511(a) (1969).

20. 42 U.S.C. § 404(a) (1964).

21. See 20 C.F.R. § 404.502 (1969).

22. Appellant also argues that Section 215 (f) of the Act, 42 U.S.C. § 415(f) (1964), is unconstitutional. That section prescribes the conditions under which a recipient of old-age benefits is entitled to a recomputation of the amount of his primary insurance and, with an exception not here applicable, states that there shall be no such recomputation except as provided therein. Appellant draws into question a portion of the section governing recomputation where a recipient of

Section 204(b) of the Act which, as we have stated, forbids adjustment or recovery of old-age insurance overpayments where the recipient is faultless and "adjustment or recovery would defeat the purpose of" Title II.[23] Appellant would read this language in conjunction with the proviso of Section 203(f) (1) (D), which then forbade a decrease in the benefits payable for any month in which a recipient earned less than $125 in wages.[24] Her position, in substance, is that the prohibition effected by that proviso is incorporated into Section 204 (b) as an implication of the prohibition established by the latter section against an adjustment or recovery of overpayments that would defeat the purposes of Title II of the Act. Thus appellant's contention is not that the Administration erred on the facts of her situation in failing to waive the $603 overpayment for 1966, but rather that as a matter of statutory law the Administration could not remedy any part of that overpayment during any month in which her income from wages was less than $125.

As a general proposition, a proviso presumably refers only to the provision to which it is annexed,[25] but this presumption, like all others, must invariably yield to the cardinal principle that the intention of the legislature must

be heeded.[26] A proviso escapes the narrow confines of its parent provision if to so imprison it would frustrate expressed or inferable legislative aims.[27] We have, however, carefully searched the legislative history of Sections 203(f) (1) (D) and 204(b) and find nothing to support appellant's claim that the restrictive proviso of the former should be imported into the latter.

What is now Section 204 has been, in much its present form, a part of the Act almost from its inception. And ever since the passage of the Social Security Act Amendments of 1939,[28] which introduced provisions relating to overpayments and underpayments, Section 204 (b) has remained substantially intact.[29] We are unable to find in its legislative background any indication that it is to be given the construction that appellant urges.

On the other hand, the proviso of Section 203(f) (1) (D) came into the Act at a much later time. The forerunner of its parent provision, enacted in 1939 to enable reductions of old-age insurance benefits on account of excess wages from gainful employment,[30] contained no limitation as to the months for which such reductions might be made, and so the Act remained until 1954. At the same time, through successive

old-age insurance has wages of more than $1,200 during a calendar year subsequent to 1953. Appellant, however, requested the Administration for a recomputation based on annual wages of less than $1,200 for each of the three years 1962, 1963 and 1964, and does not single out any constitutional principle to which this section is allegedly repugnant. We see no basis upon which we can address ourselves to her contention.

Another argument presented by appellant arises out of a misunderstanding as to the imposition of deductions against benefits under § 203, 42 U.S.C. § 403, and the actual recovery of overpayments under § 204, 42 U.S.C. § 404. We note that there is a vital distinction and need go no further.

23. 42 U.S.C. § 404(b) (1964).

24. See text *supra* at note 10.

25. *E. g.*, United States v. McClure, 305 U.S. 472, 478, 59 S.Ct. 335, 83 L.Ed. 296 (1939).

26. State v. Shaw, 8 W.W.Harr. 352, 38 Del. 352, 192 A. 610, 611 (1937); Therrell v. Smith, 124 Fla. 197, 168 So. 389, 392, rehearing denied, 124 Fla. 211, 168 So. 394 (1936); State ex rel. Jones v. Second Judicial Dist. Ct., 59 Nev. 460, 96 P.2d 1096, 98 P.2d 342 (1940).

27. *E. g.*, United States v. G. Falk & Brother, 204 U.S. 143, 150, 27 S.Ct. 191, 51 L.Ed. 411 (1906).

28. 53 Stat. 1368 (1939).

29. Section 204 in its original form, 49 Stat. 624 (1935), provided for payments for aged persons who were not qualified for benefits. Those provisions were deleted in 1939.

30. Social Security Act Amendments of 1939 § 203(d) (1), 53 Stat. 1367 (1939).

amendments between 1939 and 1954, the amount which a beneficiary of old-age insurance could earn from wages without diminution of benefits was raised from $14.99 to $80 per month.[31] In 1954, Congress for the first time wrote into the Act the injunction that

> * * * no part of the excess [earnings] * * * shall be charged to any month * * * in which the individual did not engage in self-employment and did not render services for wages * * * of more than $80.00.[32]

That provision, of course, with modification only as to amount, is now Section 203(f) (1) (D).

In 1958, Congress raised the monthly ceiling for nonreducing wage earnings to $100. The House Committee on Ways and Means explained the significance of that amount:

> Under present law, when beneficiaries earn more than $1,200 in a year, benefits may be withheld for months in which wages exceed $80. This provision is very difficult for beneficiaries to understand because it does not seem to be consistent with the $1,200 exempt amount, which is often interpreted as meaning $100 per month. Increasing the $80 figure to $100 would facilitate administration by improving public understanding and acceptance of the test. It would also eliminate hardships to beneficiaries

who lose benefits because they misunderstand the test.[33]

The Senate Committee on Finance expressed exactly the same goal.[34] And a 1965 revision, further increasing deduction free wages to $125 per month, was made, we are told, for no reason other than to liberalize the excess earnings factor and bring it in tune with the economics of the times.[35]

Appellant's bid for a broad reading of the proviso of Section 203(f) (1) (D) thus reflects a misunderstanding of its aim. Her argument supposes a congressionally-intended coalition of that section with Section 204(b) to outlaw rectification of overpayments in any month during which a recipient earns less than $125. What is now Section 203(f) (1) (D), however, was placed in the Act, not as an ally of Section 204(b), but as a method for charging wage earnings to particular months in order to determine whether monthly benefits are to be reduced.[36] As such it is an accounting provision, designed for conjunctive operation with Section 203(h),[37] which authorizes the Administration to request a declaration of estimated earnings from a beneficiary of old-age insurance.[38] By debiting the beneficiary's account in advance for the months in which he expects to have substantial earnings, overpayments and potential hardships incidental to their recoupment are avoided. At the same time, Section

31. Social Security Act Amendments of 1939 § 201, 53 Stat. 1367 (1939), amended § 203(d) (1) to provide for deduction-free wages of $14.99. Through successive amendments, that amount was raised to $80, 68 Stat. 1074 (1954).

32. 68 Stat. 1074 (1954).

33. H.R.Rep.No.2288, 85th Cong., 2d Sess. 16 (1958).

34. S.Rep.No.2388, 85th Cong., 2d Sess. 14 (1958); U.S.Code Cong. & Admin.News 1958, p. 4218.

35. See S.Rep.No.404, 89th Cong., 2d Sess. 106 (1965); U.S.Code Cong. & Admin. News 1965, p. 1943; H.R.Rep.No.213, 89th Cong., 2d Sess. 15 (1965). Section 203(e) was redesignated § 203(f)

by § 211(c) of the Social Security Act Amendments of 1960, 74 Stat. 955 (1960). The exempt wages provision was further liberalized in 1968 to permit earnings of $140 per month. 81 Stat. 834, 42 U.S.C. § 403(f) (1) (D) (Supp. IV 1969), an amendment which, however, is not applicable here.

36. S.Rep.No.1987, 83d Cong., 2d Sess. 66 (1954); U.S.Code Cong. & Admin.News 1954, p. 3710. Section 203(f) in the present law was Section 203(e) at the time of the passage of the 1954 amendments. 68 Stat. 1074 (1954). See note 35, supra.

37. 42 U.S.C. § 403(h) (1964).

38. 20 C.F.R. § 404.455(a) (1969).

203(f) (1) (D) assures the beneficiary that there will be no reduction in benefits for months in which his wage earnings are less than $125. In the event that benefits are erroneously paid or excessive earnings are disclosed in a year-end report,[39] that section merely specifies the months for which reductions are not to be charged—those months in which the beneficiary had wages of less than $125.

■ On the other hand, just how overpayments, when they occur, are to be adjusted or recovered is left open by Section 203(f) (1) (D), and is governed instead by Section 204(a).[40] Congress anticipated that cases would arise in which adjustments and recoveries of overpayments would be burdensome. To militate against such burdens, Congress specified as the controlling standard, not the Section 203(f) (1) (D) formula of a maximum amount of monthly earned wages, but the Section 204(b) criterion of whether adjustment or recovery of overpayments "would defeat the purpose of [Title II] or would be against equity and good conscience"[41]—an ameliorating provision which, as we have seen, is given wide scope by the Administration's implementing regulations.[42] We hold that Section 203(f) (1) (D) does not operate to preclude adjustment or recovery of old-age insurance overpayments during months in which the recipient's earnings from wages are beneath $125.

### III

■ Appellant has not raised an issue on appeal as to whether, in the circumstances disclosed by the record before us, the Administration erred in failing to waive adjustment or recovery of the 1966 overpayment.[43] Nonetheless, her status as a *pro se* litigant considered, we deem it appropriate to examine the Administration's decision on that score. Doing so, we find no more reason inhering in the facts of the case than in the governing law to disturb that decision.

The Administration was not insensitive to the possibilities of full waiver of the 1966 overpayment in this case. On the contrary, during administrative consideration of appellant's claim, both the hearing examiner and the Appeals Council addressed themselves to that matter. Both concluded that appellant was without fault but that, in view of appellant's non-wage income during 1967, recapture of the 1966 overpayment would not defeat the purposes of the Act.[44] Additionally, the Appeals Council could find no prejudicial change of position in consequence of appellant's receipt of the overpayment, and so no basis for a conclusion that correction of the overpayment would be against equity and good conscience.[45]

Our examination of the record persuades us to sustain the Administration. As we have stated, appellant indisputedly had non-wage income during 1967 of more than $3,000 from stock transactions, and in addition received unemployment insurance benefits. We cannot say that, absent special circumstances, the hearing examiner and the Appeals Council were wrong in holding that appellant did not also need old-age insurance benefits during the period of recoupment in 1967 to meet her current ordinary and necessary living expenses.[46] The Administration invited appellant to submit a refund questionnaire, as required by the regulations,[47] in order to maximize its

---

39. 20 C.F.R. § 404.455(b) (1969) provides that the Administration may request a beneficiary to make a declaration of his actual earnings at the close of a taxable year.

40. See text *supra* at note 20.

41. See text *supra* at notes 13–16.

42. See text *supra* at notes 14–18.

43. See text *supra* at notes 13–18.

44. See text *supra* at notes 13–16.

45. See text *supra* at notes 17–18.

46. See text *supra* at notes 14–16.

47. These forms provide information which enables the Administration to determine whether the purpose of Title II would be defeated by a recovery of an overpay-

information respecting her financial condition, but appellant declined to do so, maintaining the legal position that we have found to be lacking. We cannot attribute blame to the Administration if indeed there were circumstances, which appellant refused to disclose, reflecting adversely on the administrative ruling. And, like the Appeals Council, we find "no indication in the record that the claimant, in reliance on the overpayment, gave up a valuable right or changed her position for the worse;  *  *  *." [48]

We hold that the District Court's grant of summary judgment against appellant was proper.   That judgment must accordingly be

Affirmed.

ment, 20 C.F.R. 404.508 (1969), or whether such a recoupment would be

"against equity and good conscience" as defined in 20 C.F.R. § 404.509 (1969).

48. See text *supra* at notes 14–16.