Dorothy W. Glisson Secretary Department of Professional and Occupational Regulation Tallahassee
QUESTIONS:
1. Does the Board of Nursing have authority to administer an English competency examination under the provisions of Ch. 77-255, Laws of Florida, to any person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida?
2. Does the Board of Nursing have authority to administer an English competency examination under the provisions of s. 464.111(5), F. S.?
3. Under the provisions of Ch. 77-255, Laws of Florida, must the Board of Nursing administer a licensing examination in English to a person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, and who is taking such examination for the first time?
4. Does the board, under the provision of Ch. 77-255, Laws of Florida, have authority to administer a licensing examination in a foreign language to a person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, and who is taking such examination for the first time?
5. Does the board have authority to license a person who has passed a licensing examination administered under the provisions of Ch. 77-255, Laws of Florida?
6. Does the board have authority to refund money paid by a person to take a licensing examination if a change in statutes had rendered the person ineligible to take the examination?
SUMMARY:
The Board of Nursing has no authority to administer an English competency examination under the provisions of Ch. 77-255, Laws of Florida, nor pursuant to the authority of s. 464.111(5), F. S., to any person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, or to any applicant seeking to qualify for a license to practice as a licensed practical nurse pursuant to s. 464.111(5).
The Board of Nursing must administer licensing examinations in English to persons who have successfully completed or are currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177 regardless of whether such persons are taking the examination for the first time or as a reexamination. However, where 15 or more such persons request such examinations in their native language and bear the cost of preparing and administering the examinations in that foreign language, the board has authority to, and, in fact, must, administer the examination to the requesting persons in their native language, regardless of whether they are taking the examination for the first time or as a reexamination.
The board not only has the authority to, but must, issue a license to any person who has passed a licensing examination administered under the provisions of Ch. 77-255, because the Legislature has conclusively deemed qualified for examination and reexaminations any person within that class of persons described in s. 1 of Ch.77-255.
The board has no authority, under any circumstances, to refund any money accepted pursuant to the provisions of ss. 464.071(3) and 464.121(3), F. S., which provide for the fees to be paid upon filing an application to be licensed as a registered professional nurse or licensed practical nurse, respectively.
AS TO QUESTION 1:
Pursuant to s. 2 of Ch. 77-255, Laws of Florida, which became effective on July 1, 1977, s. 455.015, F. S., created as s. 20.30(13), (14), and (15), F. S., by Ch. 74-105, Laws of Florida, as amended by Ch. 75-177, Laws of Florida, is specifically repealed. Section 455.015, also known as the Foreign Citizens Licensure Act, applied to all persons who, prior to July 1, 1974, lawfully practiced, in a country other than the United States, a profession, for which they seek to be licensed by a board or commission within the Department of Professional and Occupational Regulation in order to practice that profession in the State of Florida. Section 455.015(1)(a). Among the provisions of this act was a requirement that each such applicant demonstrate his or her ability to communicate orally in basic English. Section 455.015(2)(a). However, as has been previously noted, all of s. 455.015 was repealed by s. 2 of Ch. 77-255 and has had no legal force or effect since July 1, 1977.
Section 1 of Ch. 77-255, Laws of Florida, clearly and unequivocally states that:
 Any person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chapter 74-105 and Chapter 75-177, Laws of Florida, shall be deemed qualified for examination and reexaminations . . . . (Emphasis supplied.)
Consequently, by his or her status as a person who has successfully completed or is currently enrolled in such an educational program, an applicant has the right to take a licensing examination and reexaminations without need to meet any other standards or criteria. By application of the well-established principle of expressio unius est exclusioalterius, where a statute enumerates the things on which it is to operate (here, completion of, or current enrollment in, the prescribed course of study), it must be construed as excluding all things not expressly mentioned therein (an English competency examination). With specific regard to the Board of Nursing, I note that ss. 464.061 and 464.111, F. S., set out the qualifications which applicants must possess in order to be qualified for a license to practice as a registered professional nurse or licensed practical nurse, respectively, and that these qualifications include the `ability to communicate in the English language.' Sections 464.061(4) and 464.111(5). Nevertheless, it is my opinion that this requirement does not now apply to the class of persons who have successfully completed or are currently enrolled in an approved course of study created pursuant to Ch. 74-105 and Ch.75-177, Laws of Florida, which class the statute, without qualification, directs to `be deemed qualified for examination and reexaminations.'
My opinion results from the specific, unambiguous, and mandatory language contained in s. 1 of Ch. 77-255, Laws of Florida, that persons within the above-described class `shall be deemed qualified for examination and reexaminations.' No other qualification, criterion, or condition is prescribed or required by this statute. See s. 1, Ch. 77-255.
Under the applicable principles of statutory construction, where a later legislative enactment restricts the operation of antecedent legislation and thus by implication modifies it, and there is a positive and irreconcilable repugnancy between the two as to indicate that the later statute was intended to prescribe the only rule which should govern the case provided for, the last expression of the legislative will prevails. See Lake v. State,18 Fla. 501 (1882), Miami Water Works Local No. 654 v. City of Miami,26 So.2d 194 (Fla. 1946), and AGO 057-287. However, a statute, covering a subject in comprehensive terms, is qualified by a later statute, embracing a particular part of the subject, only to the extent of the repugnancy between them. State v. Johnson,72 So. 477 (Fla. 1916).
In the situation presented by your inquiry, ss. 464.061 and 464.111, F. S., comprehensively provide the qualifications required for applicants for licensure in the two above-specified categories of nurses. Section 1 of Ch. 77-255, Laws of Florida, a later enactment, was clearly intended to apply to such applicants as well, and because it requires no qualifications other than membership in the prescribed class, the repugnancy between the two statutes is manifest, and s. 1 of Ch. 77-255 must prevail but only with respect to members of that class.
Therefore, I conclude that no board or commission within the Department of Professional and Occupational Regulation, including the Board of Nursing, has the authority to impose any additional qualification or requirement, such as an English competency examination, on the right of any person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, to take a licensing examination or reexaminations.
Question 1 is answered in the negative.
AS TO QUESTION 2:
My response to question 1 adequately answers this question as well, insofar as it concerns that class of persons described and discussed pursuant to question 1. In summary, persons who have successfully completed or are currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, have been deemed by the Legislature to be qualified to take the licensing examination and reexaminations administered by the Board of Nursing without any showing of other qualifications or prerequisites to take such examination and reexaminations.
However, pursuant to those principles of statutory construction cited and discussed in my response to question 1, there is no implied modification to s. 464.111, F. S., except for the particular class of persons heretofore described. Therefore, all other applicants for a license to practice as a licensed practical nurse must demonstrate that they possess the qualifications enumerated in s. 464.111 before they may take the licensing examination described in s. 464.121(1), F. S. One such qualification is `the ability to communicate in the English language.' Section 464.111(5).
Administrative bodies have no common-law powers; they are creatures of the Legislature and what powers or authority they have are limited to the statutes that create them. State ex rel. Greenburg v. Florida State Board of Dentistry, 297 So.2d 628, 636
(1 D.C.A. Fla., 1974). Therefore, when a question is raised as to the existence of a particular authority or the absence thereof, it is necessary to carefully examine the enabling statute.
Section 464.111, F. S., provides in relevant part:
 Any person who makes application to the [B]oard [of Nursing] for a license to practice as a licensed practical nurse after the effective date of this act shall submit to the board written evidence, verified by oath, that the applicant:
 (5) Has the ability to communicate in the English language. (Emphasis supplied.)
Since the statute itself sets forth the means by which an applicant is to demonstrate that he or she possesses the requisite qualifications (i.e., by submission of written evidence, verified by oath), there is reasonable doubt as to the authority of the board to require any alternative demonstration of qualifications by means of an English competency examination. In view of such reasonable doubt the question of the board's exercising its authority by so administering an English competency examination must be construed against such an exercise of authority. See
Greenburg, supra, at 636.
An applicant for a license to practice as a licensed practical nurse must submit written evidence, verified by oath, that he or she has the ability to communicate in the English language before being entitled to take the licensing examination. Regardless of the nature or form of the applicant's verified submission, it constitutes the written evidence from which the existence or absence of the ability to communicate in the English language must be ascertained. If the evidence demonstrates that the applicant has this ability and the applicant possesses the other qualifications as well, the applicant is entitled to take the licensing examination. If the evidence fails to demonstrate that the applicant has this ability, he or she is not qualified to take the examination.
Question 2 is answered in the negative.
AS TO QUESTION 3:
As has been previously discussed, by enacting Ch. 77-255, Laws of Florida, the Legislature has determined that certain classes of persons, who may be applicants for licenses to practice those professions and occupations for which licenses are required in this state, should be accorded specialized treatment with respect to meeting the requirements for licensure.
In s. 1, Ch. 77-255, one such class was defined to include:
 . . . any person who has successfully completed or is currently enrolled in an approved course of study created pursuant to chapter 74-105 and chapter 75-177, Laws of Florida . . . .
With respect to this class of persons, s. 1, Ch. 77-255 goes on, in unequivocal and mandatory language, to deem them `qualified for examination and reexamination . . . .' This mandate is then followed by the phrase:
 . . . same [i.e., examination and reexamination] to be
administered in the English language. (Emphasis supplied.)
Again, the language employed is mandatory, so that if this section, as thus far described, were standing alone, your inquiry could be simply answered in the affirmative.
However, the Legislature went further and created an exception or proviso to this general statement, saying:
 . . . unless 15 or more such applicants request that said reexamination be administered in their native tongue. [Section 1, Ch. 77-255, Laws of Florida.]
With respect to this proviso clause, there appears to me to be substantial ambiguity and doubt as to what the Legislature intended by use of the term `reexamination.' This apparent ambiguity results from the following: The class of persons upon whom s. 1 is clearly intended to operate is defined by reference to Chs. 74-105 and 75-177, Laws of Florida. These enactments had the effect of creating ss. 455.014 and 455.015, F. S. 1975, with the latter now being repealed by s. 2 of Ch. 77-255, Laws of Florida.
It is s. 455.015(1)(a), F. S. 1975, created by s. 2 of Ch. 74-105, as amended by Ch. 75-177, which described the educational courses of study by which membership in the class of persons affected by s. 1 of Ch. 77-255 is determined. These courses are themselves to be given in the applicants' native language upon the request of 15 or more such applicants. Section 455.015(1)(a).
It is clear that the purpose of granting the opportunity, in s. 1 of Ch. 77-255, Laws of Florida, under the delineated circumstances therein, for certain licensing examinations to be administered in a foreign language is to facilitate focusing the examination process on testing the applicant's professional education and skills rather than his or her linguistic ability. Similarly, the purpose of the parallel opportunity pursuant to s. 2 of Ch.74-105, Laws of Florida, to have the courses of study taught in a foreign language was to focus those courses on the refreshing of professional educational background rather than on linguistic skills. Therefore, there is an evident ambiguity as to whether or not the use of the term `reexamination' in the proviso clause of s. 1 of Ch. 77-255 was intended by the Legislature to include only examinations administered to members of the affected class who had previously failed a licensing examination, or to include every licensing examination administered to members of the affected class, where 15 or more persons request a foreign language examination or reexamination.
This ambiguity is even more apparent when one considers that for any given licensing examination there will be applicants who have successfully completed, or are currently enrolled in, the prescribed courses of study. Some of these applicants will be seeking to take the examination for the first time and others will be seeking reexamination. Therefore, a strictly literal application of s. 1, Ch. 77-255, Laws of Florida, could have the unfair, unreasonable, and ridiculous result of requiring, with regard to a group of applicants who all received their professional training in the same foreign country and who all took the same refresher courses designed to ensure that their training met the standards required by this state, that some applicants take the examination in their native language while others take the same examination in English. No literal interpretation should be given to a statute which leads to an unreasonable or ridiculous conclusion or a purpose not designed by the Legislature. State v. Sullivan, 116 So. 255 (Fla. 1928).
It is axiomatic that the intent of a statute is the law. State v. Patterson, 65 So. 659 (Fla. 1914). Thus where ambiguity is present in a statute, as herein above described, the fundamental rule in construction of statutes, to which all other rules are subordinate, is that the intent thereof is law and should be duly ascertained and effectuated. American Bakeries Co. v. Haines City,180 So. 524 (Fla. 1938). See also AGO 057-279. Consequently, the legislative intent should be followed even though it appears to contradict the strict letter of the statute and even well-settled canons of statutory construction. Smith v. Ryan, 39 So.2d 281
(Fla. 1949); Beebe v. Richardson, 23 So.2d 718 (Fla. 1945); and State v. Sullivan, 116 So. 255 (Fla. 1928).
The title of a statute is part of the statute and may be resorted to in construing the statute where ambiguity exists. Jackson Lumber Co. v. Walton County, 116 So. 771 (Fla. 1928) appealdismissed, 49 S.Ct. 338. The title to Ch. 77-255, Laws of Florida, states in relevant part:
 An Act relating to licensing of professions by administrative boards, providing that certain persons who have completed or enrolled in certain courses of study are qualified for certain examinations, providing for the administration of such examinations in a language other than English . . . . (Emphasis supplied.)
The `certain examinations' first referred to in the title are included in the body of s. 1 by the language `examination and reexamination,' referring to those examinations members of the affected class are deemed qualified to take. In referring to those examinations for which administration in a language other than English is provided, the title uses the term `such examinations,' evincing a clear intent that the same examinations are included in the field of operation of both provisions, i.e., examinations and reexaminations.
Every statute must be construed as a whole and the legislative intent determined, if possible, from what is said in the statute, with proviso clauses being construed together with the enacting clause to give effect to each part of an act and to carry out the legislative intent as manifested by the entire act and others actsin pari materia. Vocelle v. Knight Bros. Paper Co., 118 So.2d 664
(1 D.C.A. Fla., 1960); Therrell v. Smith, 168 So. 389 (Fla. 1936).
Construing the proviso clause of s. 1 together with the preceding clause thereof reveals a conflict between them, on the basis of the legislative intent apparent from the title. The general rule that, in cases of conflicting provisions of the same statute, the last expression of the Legislature in order of arrangement will prevail is subject to an exception that, if a later expression in one section is plainly inconsistent with the preceding expressions in the same section which conform to the Legislature's obvious intent, such last expression must be construed as to give an effect consistent with such previous expressions and with the policy they indicate. Sharer v. Hotel Corp. of America,144 So.2d 813 (Fla. 1962).
Therefore, I conclude that the intent of the Legislature was that the exception to the general policy that examinations administered to members of the affected class are to be in English encompasses both initial examinations and reexaminations where 15 or more such applicants request an examination in their native language and bear the full cost to the board of preparing and administering the examination in the foreign language.
This conclusion finds further support from the principle that, if part of a statute appears to have a clear meaning if considered alone, but when given that meaning is inconsistent with other parts of the same statute or others in pari materia, the entire act and those in pari materia will be examined to ascertain the overall legislative intent. Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958). One such statute in pariamateria is s. 455.014, F. S., which was also created by Chs.74-105 and 75-177, Laws of Florida, but which was not repealed by s. 2 of Ch. 77-255, Laws of Florida.
Section 455.014(2) provides:
 It is the declared purpose of this section, therefore, to encourage the use of foreign-speaking Florida residents duly qualified to become actively qualified in their professions or occupations so that all Florida citizens may receive better services.
Consequently, construing s. 1 of Ch. 77-255, Laws of Florida, literally, so that in no case would a person, deemed duly qualified to become actively qualified in his or her profession by virtue of his or her membership in the affected class, be able to take a licensing examination for the first time in his or her native language, would discourage rather than encourage the active qualification of such persons because, in comparative terms, the focus of the licensing examination would be more on language ability, rather than on professional education and skills.
Wherefore, I respond to question 3 of your inquiries as follows: Under the provisions of Ch. 77-255, Laws of Florida, the Board of Nursing must administer a licensing examination in English to a person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, and who is taking such examination for the first time, unless such person is part of a group of 15 or more applicants who have also successfully completed or are currently enrolled in such a course of study, who have requested that the licensing examination be administered in their native language, and who bear the costs of preparing and administering the examination in that language, regardless of whether the members of such group of applicants are taking the examination for the first time or as a reexamination. Where these last-described circumstances exist, the board must administer the examination to such persons in their native language.
AS TO QUESTION 4:
Having construed the applicable provisions of Ch. 77-255, Laws of Florida, in order to adequately respond to the previous question, a straight-forward application of s. 1 of Ch. 77-255, as construed, provides the answer to this question.
The board has the authority to administer a licensing examination in a foreign language to a person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida, and who is taking such examination for the first time, only where such person is part of a group of 15 or more applicants who have also successfully completed or are currently enrolled in such a course of study, who have requested that the licensing examination be administered in their native language, and who bear the cost of preparing and administering the examination in that language, regardless of whether the members of such a group are taking the examination for the first time or as a reexamination.
In fact, where these last-described circumstances exist, the board not only has authority to administer the licensing examination in the requested foreign language, but must so administer it.
AS TO QUESTION 5:
Pursuant to Ch. 464, F. S., with respect to both categories of nurses to whom the board is authorized to issue licenses, the format for establishing an applicant's qualifications are the same. There are certain qualifications which an applicant must possess as demonstrated by his or her application to the board for a license to practice as a registered professional nurse or a licensed practical nurse. Sections 464.061 and 464.011, F. S. Applicants who qualify pursuant to these statutes must then pass a licensing examination administered by the board, whereupon the board must issue them a license. Sections 464.071 and 464.121, F. S.
As discussed in my response to question 1, s. 1 of Ch. 77-255, Laws of Florida, operates to exclude the class or persons described therein, and only that particular class, from the necessity to demonstrate that they possess the qualifications for a license to practice as a registered professional nurse or as a licensed practical nurse, respectively, as required by ss. 464.061 and 464.111, F. S. The class of persons so benefited are those persons who have successfully completed or are currently enrolled in an approved course of study created pursuant to Chs. 74-105 and 75-177, Laws of Florida. Licensing for all nurse candidates is, of course, subject to successful completion of the examination.
Therefore, it is my opinion that where an applicant in such class of persons has passed the licensing examination required by ss. 464.071 and 464.121, F. S., irrespective of the language the examination was administered in, as contemplated by s. 1 of Ch.77-255, supra, not only does the board have authority to issue a license to practice nursing, but it must issue the license, unless there should exist grounds to refuse issuance thereof pursuant to s. 464.21, F. S.
Question 5 is answered in the affirmative.
AS TO QUESTION 6:
Sections 464.071(3) and 464.121(3), F. S. (1976 Supp.), address the matter of fees and refunds regarding applications for licenses to practice as a registered professional nurse and licensed practical nurse respectively. In both instances the required fees must be paid upon filing of the application, and in both instances the respective statutes specify that such fees `shall be nonrefundable.' The Legislature has not provided the board with discretionary power in this regard, nor does the board possess powers beyond that which the Legislature grants. State ex rel. Greenburg v. Florida State Board of Dentistry, supra. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, the plain and obvious provisions must control. Ryder Truck Rental, Inc. v. Bryant, 170 So.2d 822 (Fla. 1964); Phil's Yellow Taxi Co. v. Carter, 134 So.2d 230 (Fla. 1961). If the language of the statute is clear and admits of only one meaning, the Legislature should be held to have intended what it has plainly expressed. Ervin v. Peninsular Tel. Co.,53 So.2d 647 (Fla. 1951).
I can envision no circumstances in which any of the statutory changes thus far discussed would render an otherwise qualified applicant ineligible to take the examination, and certainly no such statutory change has occurred which would affect the applicability of the `no refund' provisions of ss. 464.071(3) and 464.121(3), F. S. (1976 Supp.).
However, in the event that some unforeseen set of circumstances were to arise which would render these provisions inapplicable, the board would still lack the authority to make any refunds. Pursuant to s. 464.171, F. S., the board is required to deposit all moneys received pursuant to the provisions of s. 215.37, F. S. Section 215.37(2) provides that:
 All fees . . . shall be deposited in the State Treasury into a separate trust fund to the credit of the individual board.
Once such fees have been so deposited, only the Comptroller may make disbursements, and then only as provided by law for all agencies of government. Section 215.37(6). Therefore, even if ss. 464.071(3) and 464.121(3) were inapplicable for some unforeseen reason, any claim for a refund of moneys deposited in the State Treasury would be a matter between the claimant and the state acting through the Comptroller, and not the board.
As a general rule, the Comptroller would also lack authority to make any such disbursement once the board has initiated any investigations or other action regarding the application, thus placing the fees paid therewith in the `earned fee' category. For a more detailed discussion of this point, see AGO 075-293.
Question 6 is answered in the negative.
Prepared by: Charles S. Ruberg, Assistant Attorney General